CARLET DENBY *v.* COMMISSIONER,
DEPARTMENT OF INCOME MAINTENANCE
(3737)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued November 5, 1985—decision released January 14, 1986

*Dante R. Gallucci,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*Stephen F. Frazzini,* for the appellee (plaintiff).

BORDEN, J. The defendant, the commissioner of the department of income maintenance (DIM), appeals from the trial court's judgment reversing a DIM fair hearing officer's decision to uphold DIM's proposal to discontinue the plaintiff's benefits under the Aid to Families with Dependent Children (AFDC) program. There are three interrelated issues in this appeal. The first issue is whether the trial court erroneously substituted its judgment for that of the fair hearing officer. The second issue is whether the officer's decision was erroneous on grounds other than those found by the trial court. The third issue involves a determination of the proper remedy when error is found. We find that both the trial court and the officer erred, and we remand for further proceedings.

DIM granted AFDC benefits to the plaintiff effective September 30, 1982. Shortly thereafter, DIM

learned that the plaintiff held legal title to a 1978 automobile the value of which exceeded the maximum eligibility limit of $1500. DIM therefore sent a notice of discontinuance of benefits to the plaintiff proposing termination of her benefits due to excess assets. The plaintiff made a timely request for a fair hearing pursuant to General Statutes § 17-2a, and DIM continued her benefits pending the decision.

The DIM officer held a hearing which included presentation of testimonial and documentary evidence. There was evidence that the title to the car was in the plaintiff's name. The plaintiff, however, did not declare ownership of the car when she applied for benefits, although this asset was worth $6075 as of the date of the hearing, which was approximately three months after the date she was granted benefits. The plaintiff's mother testified that she purchased the car in 1978. The mother further testified that she paid for the car in full but that the only receipt for this purchase remaining, after a house fire, was the receipt for the downpayment. Both the plaintiff and her mother testified that the car was not a gift to the plaintiff. Both considered the car to be the mother's property and testified that, if sold, the mother would receive the proceeds from the sale. They also testified that the plaintiff was eighteen years old when the car was purchased, that the plaintiff did not then have a driver's license and that she did not obtain a license to drive until March 30, 1982, approximately four years later. The mother testified that the plaintiff did not know how to drive when the car was purchased. The officer received into evidence copies of personal checks as receipts for payments made by the mother for auto repairs and insurance. The insurance was purchased in the plaintiff's name. One of these personal checks bears the memo "Carlet Denby," and one indicates "Car Insurance."

According to the mother's testimony, the reason for placing legal title in the plaintiff's name was to avoid a potential judgment creditor in a lawsuit then pending against the mother. The officer received into evidence a copy of the complaint filed against the mother and a copy of the satisfaction of judgment dated October 12, 1981. The mother testified that she and the plaintiff had agreed that the plaintiff would transfer title after the judgment was satisfied in 1981. The plaintiff twice attempted to fill out and file the title transfer forms, but misspelled her mother's name on the first form. On the second form, she listed herself as lienholder. The plaintiff testified that she submitted the registration plates to the department of motor vehicles and produced a receipt as additional proof. She stated that she had done everything she was told to do in order to transfer title, and that she did not declare ownership of the car in her 1982 AFDC application because she believed that she had effectively transferred title to her mother. The mother testified that because the car was in disrepair, she did not file the title transfer form with the department of motor vehicles.

The plaintiff argued that this evidence supports the conclusion that the plaintiff held title to the car in a resulting trust for her mother. In his memorandum of decision, the fair hearing officer rejected this argument because "[l]egal title rests with the [plaintiff], the value of the automobile is clearly in excess of departmental policy and the policy and law do not provide for disregard of the [plaintiff's] ownership of an automobile except after a transfer." He concluded that "[w]ithout such conclusive proof as evidence of the mother's purchase and without the option in [DIM] policy to disregard legal title of an automobile in favor of a claim of non-ownership, the [DIM's] action . . . is upheld." With regard to the evidence of the plaintiff's attempts

to transfer title, the officer found the documents to be "suspect, incorrectly completed and not filed with the [department of motor vehicles]." He added the observation that "[e]ven if the documents were considered to have accomplished a transfer of ownership, the [plaintiff] is listed as lien holder on the vehicle."

Aggrieved by this decision, the plaintiff appealed to the Superior Court pursuant to General Statutes § 4-183. The trial court concluded that "[i]n view of the totality of the evidence presented, the court does not consider this automobile to have been intended as a gift to the [plaintiff], and accordingly the appeal is sustained." The court then remanded the case to DIM, indicating that further proceedings were not mandated but directing DIM to continue the plaintiff's AFDC benefits.

Our disposition of the parties' claims in this appeal requires a three-tiered inquiry. We must first decide whether the trial court erred in its determination that the officer's decision was erroneous. Next, assuming that the trial court erred, we must decide whether the officer's decision is erroneous on other grounds.[1] If we find error in the officer's decision, we must then decide whether the trial court erred in remanding the matter to DIM with direction to continue the plaintiff's AFDC benefits, rather than remanding the matter to the officer for further proceedings.

I

General Statutes § 4-183 (g) prohibits the trial court from substituting its judgment for that of the agency.

---

[1] The plaintiff has filed a preliminary statement of issues pursuant to Practice Book § 3012 (a) setting forth as "alternate grounds upon which the judgment may be affirmed"; id; the claims that the officer's decision was "affected by other error of law"; General Statutes § 4-183 (g) (4); and that the officer's decision was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." General Statutes § 4-183 (g) (5).

This general principle of limited review of administrative agency findings is well established but, nevertheless, often litigated. See, e.g., *Poll* v. *Administrator,* 5 Conn. App. 391, 498 A.2d 142 (1985); *Todd* v. *Administrator,* 5 Conn. App. 309, 497 A.2d 1035 (1985); *Ruhl* v. *Fairfield,* 5 Conn. App. 104, 496 A.2d 994 (1985); *Rivera* v. *Administrator,* 4 Conn. App. 617, 495 A.2d 1125 (1985). The trial court found that "the mother was *in fact* the equitable owner" and that the automobile was not "intended as a gift" to the plaintiff. (Emphasis added.) Accordingly, the court concluded that "a resulting trust may be inferred" from those findings.

" ' "[T]he Superior Court does not try the matter de novo; it is not its function to adjudicate questions of fact, nor may it substitute its own conclusions for those of the [officer]." ' *Johnson* v. *Administrator,* 3 Conn. App. 264, 267, 487 A.2d 565 (1985)." *Kaplan* v. *Administrator,* 4 Conn. App. 152, 153, 493 A.2d 248, cert. denied, 197 Conn. 802, 495 A.2d 281 (1985); see also *Fellin* v. *Administrator,* 196 Conn. 440, 444–45, 493 A.2d 174 (1985). It is immaterial whether a resulting trust could properly be inferred from these findings as the plaintiff argues. The trial court erred when it applied its own judgment de novo to the evidence and made findings of the underlying facts upon which its conclusion was ultimately based. See *Torsiello* v. *Zoning Board of Appeals,* 3 Conn. App. 47, 49–50, 484 A.2d 483 (1984).

## II

Having determined that the trial court impermissibly substituted its judgment for that of the officer, we must decide whether the court's judgment should nevertheless be upheld on the alternate ground raised by the plaintiff, namely, that the officer's decision was "affected by other error of law." See footnote 1, supra. For purposes of our analysis, the officer's decision can

be subdivided into two related parts: (1) the officer's interpretation of applicable law and department policy as prohibiting his consideration of the plaintiff's claim that a resulting trust existed; and (2) the officer's requirement of documentary evidence either of the mother's purchase of the car or of a valid transfer of title.

The officer erred by interpreting the law and DIM policy as precluding the plaintiff's claim that a resulting trust existed under these circumstances. The pertinent DIM regulations governing an AFDC applicant's eligibility for benefits merely specify that "[o]wnership of an automobile . . . may not exceed $1,500." DIM Manual Volume I, Chapter III, Index No. 321.1. These provisions, however, do not further define the concept of "ownership." In a related context, namely, ownership of property transferred by the applicant within two years prior to the application for benefits, the DIM regulations provide that "[i]f an applicant who had *legal title* to the transferred [property] can prove that someone else, *in fact, was the actual owner* of the property, then the transfer will not be held against such applicant." (Emphasis added.) DIM Departmental Bulletin No. 3431 (1). Thus, in this related context, by allowing an applicant who previously held legal title to transferred property to prove that another person was in fact the actual owner, the regulations recognize that the concept of ownership is "sufficiently elastic to incorporate correct legal principles . . . ." *Morgan* v. *White,* 168 Conn. 336, 349, 362 A.2d 505 (1975). The specific legal principle that these regulations incorporate is otherwise known as a resulting trust. "A resulting trust arises 'by operation of law at the time of a conveyance when the purchase money for property is paid by one party and the legal title is taken in the name of another.' *Farrah* v. *Farrah,* 187 Conn. 495, 500, 446 A.2d 1075 (1982)." *Spatola* v. *Spatola,*

4 Conn. App. 79, 82, 492 A.2d 518 (1985). By construing the departmental policy to prohibit the plaintiff from proving, or the officer from considering, the plaintiff's claim of a resulting trust, the officer, in effect, did not apply "correct legal principles and [did not] recognize the realities of the varying practical situations of [the applicant]." *Morgan* v. *White,* supra. In doing so, he erred.[2]

With regard to the evidentiary requirements necessary to establish the plaintiff's claim of nonownership of the car, the officer erroneously applied too strict a standard. He was correct to presume that the mother gave the car to the plaintiff; *Farrah* v. *Farrah,* supra; and to require the plaintiff to rebut that presumption. Id. He went too far, however, in requiring documentary proof as the only viable basis upon which to find that presumption rebutted. "Extrinsic evidence, either written or [oral], is admissible on behalf of the . . . parent paying the price to rebut the presumption of an advancement or gift, and to show that a trust results . . . ." (Citation omitted.) *Fox* v. *Shanley,* 94 Conn. 350, 357–58, 109 A. 249 (1920). The officer's memorandum of decision does not expressly disclose his reliance upon DIM regulations for this strict documentary requirement. As the plaintiff points out, however, it is apparent that the officer applied those regulations which govern ownership of transferred property. Before discussing the officer's application and interpretation of those regulations, it is useful to clarify the sources of legal authority referred to in this discussion.

_____

[2] Although we find error in the officer's interpretation of departmental policy, we also note that we are not dealing here with the opinion of a judge or other judicial magistrate who, by training and experience, is accustomed to interpreting legal policy and regulations when necessary by analogy to other related sources. Administrative hearing officers, deluged with large caseloads, must rely in the first instance for the accuracy of their daily decisions upon the clarity and completeness of the language of the regulations they are called upon to enforce.

General Statutes § 17-2 (a) directs the commissioner of income maintenance to "issue regulations . . . and . . . to include therein all written statements of general applicability which implement or interpret all laws under which he operates . . . ." In addition, General Statutes § 17-3f requires the commissioner to maintain a policy manual. That section further provides that "[a]ll policy manuals of the department . . . including the supporting bulletins . . . shall be construed to have been adopted as regulations in accordance with the provisions of [Title 4,] chapter 54." Periodically, this policy manual is updated and the new provisions are transmitted to regional DIM offices via department bulletins which are attached as cover sheets to the new material. The commissioner's regulations include, therefore, the statements in the policy manual and the bulletins which implement that manual.

We now turn to the specific set of regulations relied on by the DIM officer in this case. DIM Policy Manual Volume I, Chapter III, Index 326, deals generally with the subject of "Property Transfers." Departmental Bulletin No. 3431, effective February 8, 1982, deals with the subject of "Transfer of Assets," and supplements Index 326. That bulletin provides in pertinent part: "(1) If an applicant who had legal title to the transferred resource can prove that someone else, in fact, was the actual owner of the property, then the transfer will not be held against such applicant; (2) . . . regarding the subject of rebuttal . . . the individual will be given the opportunity to present any evidence he wishes in order to rebut the presumption that he made the transfer in order to establish eligibility for benefits." This bulletin therefore indicates that, in a case where the applicant for benefits had previously held legal title to subsequently transferred property, she would be permitted to prove that she was, nevertheless, in fact not the actual owner. Thus, as discussed

above, such an applicant would be permitted to prove that a resulting trust existed. This bulletin also indicates that she would be permitted to prove her claim by "any evidence." Id.

The reference in these regulations to documentary evidence appears in Index 326 (G) (1) of the policy manual, which deals with "Determining Ownership of the Disposed of Resource . . . ." That regulation contemplates the situation in which, prior to her application for benefits, the applicant had made a transfer of property to which she had legal title. It provides in pertinent part as follows: "(1) Legal Ownership. The individual who has legal title to . . . property is the one to whom any resulting income must be charged, unless such individual can prove that such property was another person's. Such proof would consist of documentary evidence that the purchase price of the property was paid by another person and that such person had not made a gift to the legal owner."

The DIM officer, in applying this provision to the plaintiff in this case, apparently read it to mean that only documentary proof would suffice to establish actual nonownership of the automobile to which the applicant held legal title. In doing so, he read the provision too narrowly, because it must be read in connection with the bulletin which supplemented it. That bulletin, when read in conjunction with the provisions of the manual, clearly provides that the factual issue is whether the legal title holder, namely the applicant, is in fact the true owner, and that the determination of that issue must be made in light of all the evidence presented, testimonial as well as documentary. Departmental Bulletin No. 3431 (2), supra. Thus, the officer, as a trier of fact, is "bound to consider all the evidence which has been admitted, as far as admissible, for all the purposes for which it was offered and claimed. Not to do so is an *error of law* no less than it would be to

exclude the evidence when offered." (Emphasis added.) *State* v. *Suffield & Thompsonville Bridge Co.*, 82 Conn. 460, 465, 74 A. 775 (1909).

In the present case, this plaintiff is not a transferor who wishes to establish that someone else was in fact the actual owner of transferred property and to rebut the presumption that she made the property transfer in order to establish eligibility for benefits. She is now, and has always been, the legal title holder of the property, but she now wishes to prove that the property in her name is in fact owned by her mother. As discussed above, under these circumstances, she is presumed to be the donee of a gift and, therefore, must rebut that presumption. *Farrah* v. *Farrah,* supra. Nevertheless, just as a presumed transferor of property is permitted to present any evidence she wishes in order to prove that she was not in fact the actual owner of the property she transferred, and thus to rebut the presumption that she made the transfer in order to establish eligibility for benefits, so, too, must this plaintiff be given the same opportunity to have her factfinder consider any evidence she wishes to present in order to establish that her mother is in fact the owner of the car and to rebut the presumption that the plaintiff is the donee of a gift. See *State* v. *Suffield & Thompsonville Bridge Co.,* supra.

### III

Having determined that the officer's decision is "affected by [an] error of law"; General Statutes § 4-183 (g) (4); we consider the remaining question, namely, whether the trial court properly directed DIM to reinstate the plaintiff's benefits without affording the officer the opportunity to evaluate the facts in light of proper legal principles. This question pivots upon the narrow issue of whether "[t]he totality of the evidence before the fair hearing officer [can] be said to consti-

tute 'substantial evidence' as a matter of law, supporting the . . . finding that only one conclusion [denying] the plaintiff's [petition] could be reached, thereby compelling a modification of the administrative decision and directed order to the defendant." *Persico* v. *Maher,* 191 Conn. 384, 409–410, 465 A.2d 308 (1983). Our review of the record indicates that the evidence cannot be said to support only one conclusion and the proper remedy was, therefore, to remand to the officer for further proceedings rather than to direct the continuation of the plaintiff's benefits. Cf. *Plastic Distributors, Inc.* v. *Burns,* 5 Conn. App. 219, 230, 497 A.2d 1005 (1985) (judgment directed where agency could only reach one conclusion as a matter of law).

There was evidence that the plaintiff inserted her name on the second title transfer form as a lienholder. Although the circumstances tend to suggest that this was but one mistake among many in filling out those forms, this is not the only conclusion that the officer could have reached. This is a matter of credibility which is within the legitimate province of the officer's discretion. See *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 327 A.2d 588 (1973). Likewise, the mother's testimony that she did not file the title transfer form because the car was in a state of disrepair is subject to the officer's evaluation of her credibility. "A fact is not proven merely because a claimant testifies to it and no one denies it, for it is the province of the [officer] as trier of fact to determine the credibility of the witnesses and the weight of the evidence. General Statutes § 4-183 (g). . . ." *Howell* v. *Administrator,* 174 Conn. 529, 532, 391 A.2d 165 (1978).

In her brief, the plaintiff readily concedes the propriety of the officer's finding that legal title to the car was placed in her name. She argues, however, that, in view of this record, a finding that no resulting trust existed

would have been "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." General Statutes § 4-183 (g) (5); see footnote 1, supra.

We are not prepared to usurp the legitimate function of this administrative hearing officer on the basis of such speculation. " 'It is well established that where a trial court has found that an administrative agency has made invalid or insufficient findings, such court must remand the matter to the agency for further proceedings. *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 345 A.2d 9 [1974]; *Watson* v. *Howard,* 138 Conn. 464, 86 A.2d 67 [1952].' *Hartford* v. *Hartford Electric Light Co.,* 172 Conn. 71, 73, 372 A.2d 131 (1976)." *Persico* v. *Maher,* supra, 410. The officer's findings were insufficient to the extent that he refused to consider the evidence in its entirety, adhering instead to a strict requirement of documentary proof of the mother's purchase. In addition, his findings were invalid to the extent that he believed himself constrained by law to disregard the plaintiff's claims of nonownership and the existence of a resulting trust. Whether the officer's ultimate findings will be clearly erroneous, as the plaintiff asserts, once he considers the evidence in the light of the proper legal standards, is a matter that must await those findings. To hold otherwise at this time on this record would be premature and wholly speculative.[3]

There is error in part, the judgment is set aside and the case is remanded to the trial court with direction to remand to the officer for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[3] In view of our holding, we do not reach the issue, raised by both parties, of whether the trial court erred in finding that sufficient evidence existed to rebut the presumption of a gift.