[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Doreen Salmon, appeals the decision of the hearing officer of the defendant, Department of Social Services [DSS], upholding the denial of Job Connection benefits to the plaintiff. The plaintiff appeals pursuant to General Statutes §§ 17-2b and 4-183. For the reasons stated below, the Court remands the case to the hearing officer to allow further evidence to be presented on the equitable estoppel issue raised by plaintiff. Thereafter, the hearing officer shall make findings of fact and conclusions of law on that issue.
FACTS
The following facts are undisputed. The plaintiff is a recipient of Aid to Families with Dependent Children [AFDC] benefits for herself and two children, and is a voluntary participant in the Job Connection program. The Job Connection program is Connecticut's Jobs Opportunities and Basic Skills [JOBS] program authorized by Title IV-F of the Social Security Act, as amended. General Statutes § 17-483. The goal of the program is "to assist participants to find and keep unsubsidized employment, to attain economic self-sufficiency and permanent removal from AFDC." General Statutes § 17-485. The policy of the program is "to encourage AFDC applicants and recipients to prepare for and seek CT Page 8891 employment in occupations which permit the achievement of self-sufficiency, and to utilize available educational and training resources and job development efforts to enhance the potential of AFDC applicants and recipients to achieve economic independence through employment." Id. DSS is responsible for the administration of the Job Connection program. See General Statutes § 17-486(a).
The plaintiff received special benefits for child care, books and transportation under the Job Connection program from September, 1991 through August, 1992, through the Hartford Job Connection office. The special benefits received by the plaintiff were authorized in support of her efforts to earn an associate's degree. In September, 1992, the plaintiff withdrew from the Job Connection program and continued her course of study without the assistance of the Job Connection program. The plaintiff received her associate's degree in June, 1993 from Manchester Community College. The plaintiff was accepted in a bachelor's degree program at Saint Joseph's College beginning in fall, 1993.
On May 17, 1993, the plaintiff contacted the Manchester Job Connection office to apply for Job Connection special benefits to assist her in her pursuit of a bachelor's degree. The plaintiff's file was obtained from the Hartford office and reviewed. On June 16, 1993, the Manchester office notified the plaintiff that DSS declined to support her efforts to obtain a bachelor's degree, because DSS policy does not allow Job Connection supports for both an associate's degree and a bachelor's degree.
By letter dated July 3, 1993, the plaintiff requested a fair hearing pursuant to General Statutes § 17-2a to contest the denial of Job Connection benefits. A fair hearing was held before a hearing officer on August 31, 1993. At the fair hearing, the plaintiff testified that she was already enrolled in classes when she first sought Job Connection benefits, and she told the Job Connection worker in Hartford, Cassandra Henderson, of her desire to teach. Henderson explained that the Job Connection program could only help the plaintiff while she pursued either an associate's or a bachelor's degree, and advised the plaintiff that an associate's degree would not certify her to teach. The plaintiff at first chose courses related to the medical field, but then chose to undertake business courses. When it was time to reevaluate the plaintiff's Job Connection plan in September, 1992, the plaintiff told Henderson that she was unhappy with the business program and she wanted to teach. The plaintiff testified that Henderson told her that if she withdrew from the Job Connection program, completed CT Page 8892 her associate's degree on her own, then reapplied for benefits, the Job Connection program would assist her with supportive services so she could pursue her bachelor's degree. The plaintiff testified that she then withdrew from the program as discussed, and completed the associate's degree program on her own, without assistance from DSS. The plaintiff then reapplied to DSS for Job Connection benefits, which were denied.
The hearing officer upheld the decision of DSS, finding that DSS's policy provides that Job Connection post secondary education plans are subject to restrictions. The hearing officer stated that pursuant to § 9505.20 D.6. of DSS's Uniform Policy Manual [UPM], an individual is entitled to assistance while pursuing an associate's degree for up to thirty-six months, or a bachelor's degree for up to twenty-four months, if the individual is within twenty-four months of graduation. The hearing officer found that the time limit is specific for each education plan and the word "or" signifies that assistance is available while committed to one educational plan only. The hearing officer found that job Connection plans are in essence, "lifetime" plans, and can only be modified if the new goal would not increase the amount of time needed to complete the plan. The hearing officer held that since the plaintiff's plan was completed, despite the fact that the plaintiff did not receive all of the assistance that she could have received had she not requested to withdraw from the program, there is no justification to modify the plan's goal.
The plaintiff appeals from the hearing officer's decision. In her appeal, the plaintiff claims that the hearing officer incorrectly construed the relevant regulation, DSS should have considered whether good cause existed for providing special benefits to the plaintiff, and the doctrine of equitable estoppel precludes DSS from denying special benefits to the plaintiff.
LAW
Jurisdictional Prerequisites
"It is well established that the right to appeal an administrative action is created only by statute and a party must exercise that right in accordance with the statute in order for the court to have jurisdiction." New England Rehabilitation Hospitalof Hartford, Inc. v. Commission on Hospitals Health Care,226 Conn. 105, 120, 627 A.2d 1257 (1993), citing Munhall v. InlandWetlands Commission, 221 Conn. 46, 50, 602 A.2d 566 (1992). In CT Page 8893 this case, the plaintiff appealed pursuant to General Statutes §§ 17-2b and 4-183. General Statutes § 17-2b provides that an applicant for a fair hearing, "if aggrieved, may appeal therefrom in accordance with section 4-183." Section 4-183(a) provides, in relevant part, that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section."
1. Aggrievement
In order to have standing to bring an administrative appeal, a person must be aggrieved. New England Rehabilitation Hospital ofHartford, Inc. v. Commission on Hospitals Health Care, supra,226 Conn. 120. The test for determining aggrievement is twofold:
 "[F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . . ."
(Internal quotation marks omitted.) Id., 121. The court finds that the plaintiff, as the applicant for Job Connection benefits, has a specific personal and legal interest in the subject matter of the decision. The Court finds that the plaintiff's specific personal and legal interest has been injuriously affected in that the plaintiff has been denied the Job Connection benefits to which she claims to be entitled.
2. Timeliness
Pursuant to § 4-183(c), the plaintiff must serve and file her appeal within forty-five days of the mailing of the hearing officer's final decision. The final decision in this case indicates that it was mailed on October 27, 1993. (Return of Record [ROR], Decision of Hearing Officer). The plaintiff served DSS by mailing a copy of the appeal, certified mail, return receipt requested pursuant to General Statutes § 4-183(c) on November 24, 1993 to the commissioner of DSS. (Affidavit of Service). The green CT Page 8894 return receipt card in the file indicates that the appeal was received by the commissioner's office on November 26, 1993. (Affidavit of Service). The plaintiff filed the appeal on December 1, 1993. Since the plaintiff's appeal was both served and filed within forty five days of the mailing of the hearing officer's decision, the Court finds the plaintiff's appeal was timely filed.
Scope of Review
"[T]he usual scope of a court's review of administrative action is quite limited." (Citations omitted.) Starr v.Commissioner of Environmental Protection, 226 Conn. 358, 371,627 A.2d 1296 (1993). General Statutes § 4-183(j) provides in relevant part:
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
It is not the function of the trial court "`to retry the case or to substitute its judgment for that of the administrative agency.'" (Citations omitted.) Griffin Hospital v. Commission on Hospital Health Care, 200 Conn. 489, 496, 512 A.2d 199 (1986).
"Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion.'" (Citations omitted.) Id. "Although the interpretation of statutes is ultimately a question of law . . . it is well established practice . . . to `accord great deference to the construction given [a] statute by the agency charged with its enforcement.'" (Citations omitted.) Id.; see Starr v. CommissionerCT Page 8895of Environmental Protection, supra, 226 Conn. 372. "This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." Griffin Hospital v. Commissionon Hospitals Health Care, supra, 497. "`Ordinarily, the construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference.'" (Citations omitted.) Board of Education v. State EmployeesRetirement Commission, 210 Conn. 531, 541, 556 A.2d 572 (1989). However, "[t]he legal determinations of the agency must stand . . . `if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts.'" (Citation omitted.) All Brand Importersv. Department of Liquor Control, 213 Conn. 184, 192, 567 A.2d 1156
(1989).
Construction of Regulation
UPM § 9505.01 B. provides the limitations on Job Connection Services: "1. Not every individual is entitled to receive Job Connection Services. 2. Provision of services is limited, based on the availability of resources. 3. The Department determines which eligible individuals receive services. 4. All services are not available in all districts." UPM § 9505.20 A. provides: "The Department develops a Job Connection Plan in conjunction with the individual. The Plan is based on the results of the assessment and takes into account the projected availability of jobs in the local labor market." UPM § 9505.20 D.6. provides:
 post secondary educational plans are subject to the following time limits:
 a. not to exceed 36 consecutive calendar months towards the completion of an Associate's Degree or certificate program, starting with the month the individual starts to earn credits towards his or her certificate or degree, except as in c, below; or
 b. not to exceed 24 consecutive calendar months towards the completion of a Bachelor's Degree, starting with the month the individual starts to earn credits towards his or her degree, and only when the individual is within 24 months of graduation, except as in c, CT Page 8896 below; or
 c. not to exceed a reasonable amount of time, if education is interrupted or delayed by illness of the individual or of an immediate family member, or by other good cause.
UPM § 9505.20 E. provides, inter alia, that Job Connection plans are reviewed at least annually and are modified as appropriate. UPM § 9505.20 E.6. provides that once career training has begun, plans can only be modified to establish a new employment goal under certain conditions. UPM § 9505.20 F.2. provides that "[o]nce established, a Plan remains in effect for as long as an individual receives AFDC, even if there are intervening periods of ineligibility."
The plaintiff argues that DSS policy does not necessarily preclude a Job Connection participant from receiving assistance with both an associate's degree and a bachelor's degree, because UPM § 9505.20 D.6. is ambiguous and the apparent intent of the limits in UPM § 9505.20 D.6. was simply to ensure that participants complete post secondary education and secure employment within a reasonable time period. The plaintiff asserts that the ambiguity in the regulation is illustrated by the fact that two different workers, Henderson in Hartford, and another worker in Manchester, gave differing interpretations of DSS's policy to the plaintiff. The plaintiff argues that the regulation should be construed in a rational way to promote the policy of the program, not to thwart its purpose.
"[V]alidly enacted regulations of an administrative agency carry the force of statutory law." Griffin Hospital v. Commissionon Hospitals Health Care, supra, 200 Conn. 497. DSS's policy manual is the equivalent of a state regulation and, as such, carries the force of law. General Statutes § 17-3f(c); Richard v.Commissioner, 214 Conn. 601, 573 A.2d 712 (1990).
"In construing regulations, the general rules of statutory construction apply." Smith v. Zoning Board of Appeals, 227 Conn. 71,629 A.2d 1089 (1993). In construing a regulation, the court looks first "to the language of the regulation to determine the intent of the enacting body . . . . If the language of the regulation is ambiguous, the court can look to its purpose as an aid in construing it." (Citation omitted.) Double I Limited Partnershipv. Plan Zoning Commission, 218 Conn. 65, 73, 588 A.2d 624 (1991). CT Page 8897 When statutes are remedial in nature, . . . they "are to be liberally construed in favor of those who the legislature intended to benefit." (Internal quotation marks omitted.) State v. Guckian,27 Conn. App. 225, 244, 605 A.2d 874 (1992). "Remedial" laws are those which are "designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good." Black's Law Dictionary 1163 (5th ed. 1979). This court finds that the statutes regarding the Job Connection program, and the regulations promulgated thereunder, are remedial in nature, since the goal and purpose of the program, to assist recipients of AFDC to attain self-sufficiency and achieve economic independence, promote the public good.
In her decision, the hearing officer reasoned that the time limit in UPM § 9505.20 D.6. is specific for each education plan and the word "or" signifies that assistance is available while committed to one educational plan only, and Job Connection plans are, in essence, "lifetime" plans. The hearing officer further noted that pursuant to § 9505.20 E.6.e. of the UPM, Job Connection plans can only be modified if the new goal would not increase the amount of time needed to complete the plan.
The Court finds that the regulation is not ambiguous. The Court also finds that the hearing officer's interpretation of § 9505.20 D.6.c is not unreasonable or arbitrary in that she did not construe the regulation beyond the fair import of its language.
Good Cause Exception
The plaintiff also argues that the hearing officer should have considered whether good cause existed to extend the time limits for assistance under UPM § 9505.20 D.6.c. However, the plain wording of subsection c indicates that it applies when education is "delayed" because of illness of the individual or family member, or for other good cause. The court finds that because the plaintiff's education has not been delayed, this subsection is inapplicable to the plaintiff's situation.
Equitable Estoppel
The plaintiff urges the court to consider her equitable estoppel claim, if the court does not sustain the plaintiff's appeal on the ground that DSS improperly construed the UPM provision. The plaintiff argues that the doctrine of equitable estoppel precludes DSS from denying special benefits to the CT Page 8898 plaintiff, in that the plaintiff changed her position, to her detriment, in reliance on the information given to her by Henderson. In the alternative, the plaintiff asserts that this case should be remanded to the hearing officer for a determination by the hearing officer as to whether equitable estoppel requires that Job Connection special benefits be granted, because the hearing officer did not consider this issue in her decision.
"[A]s a general rule, estoppel may not be invoked against a public agency in the exercise of its governmental functions."Kimberly-Clark Corp. v. Dubno, 204 Conn. 137, 146, 527 A.2d 679
(1987), citing Zoning Commission v. Lescynski, 188 Conn. 724, 731,453 A.2d 1144 (1982). Nevertheless, an exception to this general rule is made "where the party claiming estoppel would be subjected to a substantial loss if the public agency were permitted to negate the acts of its agents." Kimberly-Clark Corp. v. Dubno, supra, 147. An estoppel claim is predicated on proof of two essential elements: "`the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury . . . .'" (Citations omitted.) Id., 148, quotingZoning Commission v. Lescynski, supra, 731. "In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." Kimberly-Clark Corp. v. Dubno, supra, 148. "It is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Citations omitted; internal quotation marks omitted.) Id.
DSS claims that the court may not consider the estoppel issue because the plaintiff failed to raise it at the agency hearing. However, it is clear from the record, that while the plaintiff did not label her claim "estoppel" at the hearing, the plaintiff's argument and testimony at the hearing show that the essence of the plaintiff's claim at the hearing was one of estoppel. (See ROR, Transcript of Fair Hearing, pp. 7-18).
The hearing officer made no findings of fact or conclusions of law with respect to the plaintiff's estoppel claim, although the plaintiff testified at the hearing regarding her claim that she CT Page 8899 withdrew from the Job Connection program after receiving advice to do so from Henderson. The hearing officer's decision instead relied solely on the rationale that application of § 9505.20 D.6. to the facts of the plaintiff's case rendered the plaintiff, at this point in her schooling, ineligible for Job Connection benefits. "It is well established that where a trial court has found that an administrative agency has made . . . insufficient findings, such court must remand the matter to the agency for further proceedings . . . ." (Citations omitted; internal quotation marks omitted.) Denby v.Commissioner, 6 Conn. App. 47, 59, 502 A.2d 954 (1986); see Persicov. Maher, 191 Conn. 384, 410, 465 A.2d 308 (1983).
Therefore, this Court hereby remands this case to the hearing officer to consider the estoppel issue, because the hearing officer made no findings of fact with respect to the plaintiff's estoppel claim.
On remand, the hearing officer should require testimony from the Job Connection caseworker, Cassandra Henderson. Plaintiff's attorney would have an opportunity to cross-examine Ms. Henderson at that time. Plaintiff's attorney would also have an opportunity to present any additional evidence plaintiff may have regarding this issue. Furthermore, plaintiff's attorney could concisely argue the legal issues regarding equitable estoppel to the hearing officer.
The hearing officer might feel that the plaintiff is at least entitled to 12 more months of benefits, even though she is now nearly finished with her Bachelor's degree program. In accordance with the stated policy of the program, participants who struggle to earn both an Associates and Bachelor's degree should receive all the help possible. It seems quite inappropriate to throw obstacles in the way of the plaintiff, who is working very hard to take herself off AFDC and to become a financially productive member of society and a taxpayer.
At the Court hearing in this case, the Assistant Attorney General stated that equitable estoppel does not apply, because the case worker, Ms. Henderson, is not a person authorized by the Agency to give advice such as the advice the plaintiff said she received. This argument is totally without merit.
The caseworkers are put on the "front lines" by the Commissioner, to deal with the Agency's clients. They are explicitly authorized to speak on behalf of the Agency. It is CT Page 8900 illogical to require every client of the Department of Social Services to get a "second opinion" or to ask for a written statement of authority from the caseworker, every time the client gets advice from the caseworker.
The Commissioner must delegate authority for the smooth operation of the agency. Those workers who are put in direct contact with clients and are designated "caseworkers", would haveapparent, if not explicit, authority.
This case is remanded to the hearing officer for factual findings and rulings of law on the question of equitable estoppel, as it applies to this case.
CONCLUSION
The court finds that the disputed provision, UPM § 9505.20 D.6., is unambiguous, and that DSS properly construed and applied the provision to find the plaintiff ineligible for benefits on the face of the regulation.
Furthermore, the Court finds that the "good cause" provision of § 9505.20 D.6.c is inapplicable because there is no evidence in the record that the plaintiff's education has been delayed.
The court, however, remands this case to the hearing officer to consider the plaintiff's equitable estoppel claim, since the hearing officer made no findings of fact or conclusions of law in her decision with respect to that issue.
SO ORDERED, BY THE COURT,
Honorable Jonathan J. Kaplan Superior Court Judge