BERDON, J.
The principal issue presented in this case is whether the hearing officer of the defendant commission on human rights and opportunities (commission) correctly allocated the burden of proof between the plaintiff and the defendant employer in determining if the employer was liable for a discriminatory employment practice.
The plaintiff, Donald Levy, filed a complaint with the commission alleging that the defendant Entertainment and Sports Programming Network, Inc. (ESPN), discriminated against him on the basis of his physical disability — a hearing impairment — in violation of Gen *98 eral Statutes § 46a-60.[1] The commission’s investigating officer found reasonable cause to believe that ESPN had discriminated against the plaintiff and certified the complaint for a public hearing pursuant to General Statutes §§ 46a-83 and 46a-84. The hearing officer appointed by the commission found that ESPN was not hable for a discriminatory employment practice. The plaintiff appealed to the Superior Court, which affirmed the hearing officer’s decision. On appeal, the AppeUate Court affirmed the trial court’s decision and the hearing officer’s analysis. Levy v. Commission on Human Rights & Opportunities, 35 Conn. App. 474, 646 A.2d 893 (1994). We granted the plaintiffs petition for certification[2] and now affirm the judgment of the Appellate Court, though on different grounds.
The hearing officer found the following facts.[3] Aware of the fact that the plaintiffs hearing was impaired, *99 and that he was required to wear a hearing aid, ESPN employed the plaintiff on January 3, 1980, as a remote operator-truck driver. The position required the plaintiff to operate a truck containing sophisticated broadcasting equipment to various broadcast locations and to assist in assembling the equipment for the telecast. Federal regulations required that the plaintiff meet minimum physical requirements, including a minimal level of hearing, before being allowed to drive. See 49 C.F.R. § 391.41 et seq.[4] Because ESPN accepted a medical certificate from Robert Marshall, the plaintiffs physician, dated October 31, 1979, stating that the plaintiff had the requisite level of hearing, the plaintiff was not required to undergo a medical examination when he was initially employed.
Within four months of the date of his employment, the plaintiff was involved in a series of incidents that raised concerns regarding his ability to perform safely the duties of his position. First, a few days after being employed, the plaintiff nearly caused an accident when he fell asleep at the wheel while returning from a sporting event in Rhode Island. Next, an ESPN vehicle was *100 almost rendered inoperative when the plaintiff failed to notice that the safety valve to the compressor governor, which regulates the brakes, was venting pressurized air. On another occasion, while operating an ESPN vehicle, the plaintiff hit an overhang at a Connecticut gas station. Similarly, while backing up a truck at a location in Louisiana, the plaintiff failed to heed shouted warnings from his coworkers and struck the overhang of a building, thereby causing damage to the vehicle.
*92 “(e) Service of process pursuant to this section shall be sufficient to confer jurisdiction of any such action upon the court to which the process *93 is returnable. The court may proceed to determine the issues in the action and render final judgment but the court may, in its discretion, require further order of notice to the operator or owner.
*100 In addition, the plaintiff was involved in two separate unrelated incidents in which he improperly activated a television camera. The first incident caused minor damage to the equipment, while the second incident completely “smoked” the camera. After the second incident, Joseph Commare, ESPN’s director of engineering, suspended the plaintiff for two weeks without pay, effective April 5, 1980. Commare then asked Rick McDowell, ESPN’s safety manager, to evaluate the plaintiffs competence as a truck driver. McDowell concluded that the plaintiffs driving history demonstrated that he could not safely operate a truck.
On April 21,1980, after he had been removed from the remote operator position, ESPN directed the plaintiff to undergo a medical examination by Bainbridge Hanley, a physician, to ascertain whether the plaintiff met the physical standards set forth in the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 391.41 et seq.[5] As part of the examination, the plaintiffs hearing was evaluated by means of a forced whisper test, which was administered by Hanley’s wife. The plaintiff failed the forced whisper test, and, as a consequence, Hanley refused to certify that the plaintiff was qualified to be a truck driver.[6]
*101 Subsequently, on April 29, 1980, the plaintiff was transferred at his existing salary to the position of studio technician III. That same day, Barry Black, ESPN’s director of human resources, sent an intraoffice memo to Commare stating that “this transfer is necessary due to the fact that [the plaintiffs] hearing impairment has prevented him from satisfactorily passing ... [a] physical examination required for him to continue in his present capacity of Mobile Unit Driver.” The plaintiff, however, testified that he was simply told by Commare that he was being removed from his position as a truck driver because of his hearing disability.
With respect to the plaintiffs transfer from the position of remote operator-truck driver to that of studio technician, the hearing officer found that on “April 29, 1980, Mr. Commare advised [the plaintiff] that he was being transferred out of the remote area because of his hearing disability.”[7] The hearing officer then concluded that the April 29, 1980 memo from Black to Commare, “without more, showed that ESPN deliberately used [the plaintiffs] hearing impairment as the basis of its decision to transfer [the plaintiff].”
After his transfer, the plaintiff periodically applied for other positions within ESPN, including a remote operator-truck driver position that was posted in November, 1982. ESPN offered various reasons why the plaintiff was never hired to fill any of those positions. Counsel for ESPN noted in correspondence with the commission’s investigator that, with respect to “the remote operator positions [sought by the plaintiff in 1982], it was already ESPN’s belief that because of his *102 hearing impairment, [the plaintiff] was disqualified for them under [department of transportation] regulations . . . .”
Ultimately, on June 4, 1983, the plaintiff resigned. On May 23, 1983, prior to his resignation, the plaintiff filed a complaint with the commission alleging that ESPN had violated his rights under § 46a-60 (a) (1). The plaintiff claimed that, because of his hearing impairment, ESPN had removed him from the remote operator-truck driver position, had deprived him of promotional and other employment opportunities, and had constructively discharged him from his employment.
I
Connecticut statutorily prohibits discrimination in employment based upon race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, and learning disability or physical disability. General Statutes § 46a-60 (a) (1). Additionally, state law protects individuals from employment discrimination based upon their sexual orientation. See General Statutes § 46a-81c. Nevertheless, express discrimination is legally permissible if the employer proves that the factor in question is a bona fide occupational qualification (BFOQ) reasonably necessary for the normal operation of the employer’s particular business.[8] General Statutes § 46a-60 (a) (1); see Automobile Workers v. Johnson Controls, Inc., 499 U.S. 187, 111 S. Ct. 1196, 113 L. Ed. *103 2d 158 (1991) (whether gender is a BFOQ); Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) (age is a BFOQ for airline captains). Clearly, a minimal level of hearing is a BFOQ for the position of remote operator-truck driver. 49 C.F.R. § 391.41 et seq. The hearing officer, however, made no finding as to whether the plaintiff met or did not meet that prerequisite.[9]
Although this case is based solely on Connecticut law, we review federal precedent concerning employment discrimination for guidance in enforcing our own anti-discrimination statutes. See Miko v. Commission on Human Rights & Opportunities, 220 Conn. 192, 202, 596 A.2d 396 (1991). Under federal law, there are four general theories of employment discrimination: disparate treatment,[10] adverse or disparate impact, [11] perpetuation into the present of the effects of past discrimination,[12] and failure to make a reasonable *104 accommodation.[13] ABA Section of Labor and Employment Law, Employment Discrimination Law (2d Ed. 1983) p. 1. To date, in Connecticut, we have recognized the disparate treatment and adverse impact theories of employment discrimination.[14]
This appeal requires consideration of only the “disparate treatment” type of case. Used in this general sense, “disparate treatment” simply refers to those cases where certain individuals are treated differently than others.[15] Teamsters v. United States, 431 U.S. 324, 335-36, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977). The principal inquiry of a disparate treatment case is whether the plaintiff was subjected to different treatment because of his or her protected status.
Under the analysis of the disparate treatment theory of liability, there are two general methods to allocate the burdens of proof: (1) the mixed-motive/Price Waterhouse model;[16] Price Waterhouse v. Hopkins, 490 U.S. *105 228, 246, 109 S. Ct 1775, 104 L. Ed. 2d 268 (1989); and (2) the pretext/McDonnell Douglas-Burdine model. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).
A
Mixed-Motive/Price Waterhouse Model
A “mixed-motive” case exists when an employment decision is motivated by both legitimate and illegitimate reasons. See Price Waterhouse v. Hopkins, supra, 490 U.S. 228 (plurality opinion). In such instances, aplaintiff must demonstrate that the employer’s decision was motivated by one or more prohibited statutory factors. Whether through direct evidence or circumstantial evidence,[17] a plaintiff must “submit enough evidence that, if believed, could reasonably allow a [fact finder] to conclude that the adverse employment consequences resulted ‘because of an impermissible factor.” Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1187 (2d Cir. 1992).
“The critical inquiry [in a mixed-motive case] is whether [a] discriminatory motive was a factor in the [employment] decision ‘at the moment it was made.’ ” Miko v. Commission on Human Rights & Opportunities, supra, 220 Conn. 205, quoting Price Waterhouse *106 v. Hopkins, supra, 490 U.S. 241. Under this model, the plaintiffs prima facie case requires that the plaintiff prove by a preponderance of the evidence that he or she is within aprotected class and that an impermissible factor played a “motivating” or “substantial” role in the employment decision. Price Waterhouse v. Hopkins, supra, 258; Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); Tyler v. Bethlehem Steel Corp., supra, 958 F.2d 1181 (“[s]hould the plaintiff wish to prove his case as a ‘mixed-motives’ case, he must focus his proof directly at the question of discrimination and prove that an illegitimate factor had a ‘motivating’ or ‘substantial’ role in the employment decision”).
Once the plaintiff has established his prima facie case, the burden of production and persuasion shifts to the defendant.[18] “[T]he defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken [the impermissible factor] into account.”[19] Price Waterhouse v. Hopkins, supra, 490 *107 U.S. 258; Mt. Healthy City Board of Educations. Doyle, supra, 429 U.S. 274; see In re McCort, 161 Vt. 481, 490-91, 650 A.2d 504 (1994) (adopting under its own antidiscrimination statute the burden shifting form of analysis for mixed-motive cases).
B
Pretext/McDonnell Douglas-Burdine Model
Often, a plaintiff cannot prove directly the reasons that motivated an employment decision. Nevertheless, a plaintiff may establish a prima facie case of discrimination through inference by presenting “facts [that are] sufficient to remove the most likely bona fide reasons for an employment action . . . .” Tyler v. Bethlehem Steel Corp., supra, 958 F.2d 1180. From a showing that an employment decision was not made for legitimate reasons, a fact finder may infer that the decision was made for illegitimate reasons. It is in these instances that the McDonnell Douglas-Burdine model of analysis must be employed. ABA Section of Labor and Employment Law, Employment Discrimination Law, 1987-1989 Supplement (2d Ed. 1991) p. 2; see Texas Dept. of Community Affairs v. Burdine, supra, 450 U.S. 248; McDonnell Douglas Corp. v. Green, supra, 411 U.S. 792.
The plaintiffs burden of establishing a prima facie case is not onerous under this model. Texas Dept. of Community Affairs v. Burdine, supra, 450 U.S. 253. The plaintiff need prove only four elements by a preponderance of the evidence: (1) that he or she belongs to a protected class; (2) that he or she applied and was qualified for the position in question; (3) that despite his or her qualifications, the individual was rejected; and (4) that after the individual was rejected, the position *108 remained open.[20] Id., 252-53; Miko v. Commission on Human Rights & Opportunities, supra, 220 Conn. 203. Once a plaintiff has established a prima facie case of discrimination, a presumption of discrimination is created.
Under the McDonnell Douglas-Burdine model, the burden of persuasion remains with the plaintiff. Texas Dept. of Community Affairs v. Burdine, supra, 450 U.S. 253; Miko v. Commission on Human Rights & Opportunities, supra, 220 Conn. 204. Once the plaintiff establishes a prima facie case, however, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating (not proving) some legitimate, nondiscriminatory reason for the plaintiff s rejection. Texas Dept. of Community Affairs v. Burdine, supra, 254; Miko v. Commission on Human Rights & Opportunities, supra, 204. Because the plaintiffs initial prima facie case does not require proof of discriminatory intent, the McDonnell Douglas-Burdine model does not shift the burden of persuasion to the defendant. Therefore, “[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant’s evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.” Texas Dept. of Community Affairs v. Burdine, supra, 254-55; see Miko v. Commission on Human Rights & Opportunities, supra, 204. Once the defendant offers a legitimate, nondiscriminatory reason, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the proffered reason is pretextual. Texas Dept. of Community Affairs v. Burdine, supra, 255-56; Miko v. Commission on Human Rights & Opportunities, supra, 204.
*109 The McDonnell Douglas-Burdine analysis keeps the doors of the courts open for persons who are unable initially to establish a discriminatory motive. If a plaintiff, however, establishes a Price Waterhouse prima facie case, thereby proving that an impermissible reason motivated a defendant’s employment decision, then the McDonnell Douglas-Burdine model does not apply, and the plaintiff should receive the benefit of the defendant bearing the burden of persuasion.
C
Hearing Officer Applied Incorrect Analytical Model
The facts found by the hearing officer indicate that, because of the plaintiffs driving history, ESPN may have had a legitimate reason for transferring the plaintiff from, and subsequently refusing to transfer him to, the position of remote operator-truck driver. Nevertheless, the hearing officer also specifically found that “[o]n April 29, 1980, Mr. Commare advised [the plaintiff] that he was being transferred out of the remote area because of his hearing disability.” (Emphasis added.) This latter finding, standing alone, is direct evidence of an impermissible motive for transferring the plaintiff.[21] Direct evidence of discriminatory intent “may include evidence of actions or remarks of the employer that reflect a discriminatory attitude ... or [c]omments [that] demonstrate a discriminatory animus in the decisional process. ...” Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991). Despite this evidence, the hearing officer did not shift the burden to ESPN under the mixed-motive analysis to prove that it would have made the same employment decision even if it did not take the plaintiffs physical disability into consideration. Rather, the hearing officer employed the McDonnell Douglas *110 Burdine analysis and found that ESPN had articulated a legitimate nondiscriminatory reason, namely, the plaintiffs failure to drive safely.[22] The hearing officer specifically concluded that ESPN “need not persuade the court that it was actually motivated by the proffered reasons.” Additionally, the hearing officer concluded that the plaintiff had not demonstrated that ESPN’s proffered reasons were pretextual. This analysis was incorrect. Because we conclude that the plaintiff had produced evidence that ESPN was motivated, at least in part, by his disability in deciding to transfer him, we hold that the hearing officer should have used the mixed-motive model of analysis.
II
ESPN argues that regardless of the model used, the plaintiff could not have prevailed. In essence, ESPN claims that even if direct evidence was presented requiring it to have shouldered the burden of persuasion discussed previously, the hearing officer’s failure to do so was harmless and as such the hearing officer’s decision should be affirmed. We agree.
Harmless error analysis is available in the administrative context. The Uniform Administrative Procedure Act provides that if an individual’s substantial rights have been prejudiced, the case should be remanded unless but one conclusion is required by law. General Statutes § 4-183 (j) and (k); see also Adriani v. Commission on Human Rights & Opportunities, 220 Conn. 307, 329 n.21, 596 A.2d 426 (1991), on appeal after remand, 228 Conn. 545, 636 A.2d 1360 (1994); Denby v. Commissioner, 6 Conn. App. 47, 58-59, 502 A.2d 954 (1986); Plastic Distributors, Inc. v. Burns, 5 Conn. App. 219, 230, 497 A.2d 1005 (1985). We held in Adriani v. *111 Commission on Human Rights & Opportunities, supra, 329 n.21, that if the evidence supports only one conclusion as a matter of law, then, despite the hearing officer’s error, the result should be affirmed. In this case, if the hearing officer’s error in applying the incorrect analytical model is to be held harmless, we must be able to state with legal certainty that the hearing officer, if she had applied the correct analysis, would have determined that, notwithstanding his physical disability, ESPN would have transferred the plaintiff from, and refused to reinstate him to, the position of remote operator-truck driver.
ESPN argues that there are two possible, nondiscriminatoiy legitimate reasons it might have had for transferring the plaintiff: (1) his unsafe driving history, and (2) Hanley’s refusal to certify the plaintiff’s hearing. Because we find the former reason to be adequate to hold the hearing officer’s error harmless, we need not reach the latter reason, which would preclude the need for any employment discrimination analysis.[23]
The facts surrounding the plaintiffs driving history were fully considered by the hearing officer. Among the hearing officer’s factual conclusions were that (1) “Mr. McDowell [of ESPN] investigated [the plaintiffs] driving history and concluded that [the plaintiff] could not safely operate a truck,” (2) “Mr. McDowell’s conclusion was not based on [the plaintiffs] hearing impairment and would have been the same for any driver with the same driving history,” and (3) “[b]ased on Mr. McDowell’s investigation and recommendation and for public safety reasons, Mr. Commare removed [the plain *112 tiff] from the remote operator position.” These factual findings, which the hearing officer reached irrespective of any particular mode of legal analysis employed, necessarily require the conclusion that ESPN transferred and refused to reinstate the plaintiff as a remote operator on the basis of his unsafe driving history, which was a legitimate, nondiscriminatory reason. Therefore, the hearing officer’s incorrect analysis is harmless.
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.

 General Statutes § 46a-60 provides in pertinent part: “(a) It shall be a discriminatory practice in violation of this section:
“(1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual’s . . . physical disability . . . .”
General Statutes § 46a-51 (15) defines “[pjhysically disabled” as referring “to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment . . . .” (Emphasis added.)

 We certified the following issue: “Was direct evidence of discrimination presented to the hearing officer so as to require the hearing officer to shift the burden of proof to the defendant?” Levy v. Commission on Human Rights & Opportunities, 231 Conn. 931, 649 A.2d 253 (1994).

 We review the hearing officer’s findings according to the “substantial evidence” rule, which governs judicial review of administrative findings. “In determining whether an administrative finding is supported by ‘substantial evidence,’ the reviewing court must defer to the agency’s assessment of the credibility of witnesses .... The determination of issues of fact by the administrative agency should be upheld if the record before the agency affords a substantial basis of fact from which the fact in issue can be reasonably inferred .... Ultimately, the question is not whether the trial court would have reached the same conclusion but whether the record *99 before the agency supports the action taken.” (Citations omitted; internal quotation marks omitted.) Miko v. Commission on Human Rights & Opportunities, 220 Conn. 192, 200-201, 596 A.2d 396 (1991).

 Title 49 of the Code of Federal Regulations, § 391.41, provides in relevant part: “(a) A person shall not drive a motor vehicle unless he is physically qualified to do so and, except as provided in § 391.67, has on his person the original, or a photographic copy, of a medical examiner’s certificate that he is physically qualified to drive a motor vehicle.
“(b) A person is physically qualified to drive a motor vehicle if that person
“(11) First perceives a forced whisper voice in the better ear at not less than 5 feet with or without the use of a hearing aid or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater that 40 decibels at 500 Hz, 1,000 Hz, and 2,000 Hz with or without a hearing aid when the audiometric device is calibrated to American National Standard (formerly ASA standard) Z24.5-19S1.”
Section 391.45 (b) (1) requires that commercial drivers be medically examined and certified every twenty-four months.

 See footnote 4.

 In his complaint filed with the commission, the plaintiff challenged the accuracy of the forced whisper test. The hearing officer concluded, however, that even if Hanley had found that the plaintiffs hearing was sufficient to *101 satisfy federal requirements, ESPN was nevertheless entitled to remove the plaintiff from this position solely on account of his unsafe driving record. See part II of this opinion.

 The hearing officer also found that McDowell’s conclusion regarding the plaintiffs inability to drive safely was based on the repeated incidents in which the plaintiff had been involved and not on his hearing impairment.

 The United States Supreme Court has narrowly defined BFOQ: “[Discrimination is permissible [in] ‘certain instances’ where . . . discrimination is ‘reasonably necessary’ to the ‘normal operation’ of the ‘particular’ business. Each one of these terms — certain, normal, particular — prevents the use of general subjective standards and favors an objective, verifiable requirement. But the most telling term is ‘occupational’; this indicates that these objective, verifiable requirements must concern job-related skills and aptitudes. ’’Automobile Workers v. Johnson Controls, Inc., 499 U.S. 187, 201, 111 S. Ct. 1196, 113 L. Ed. 2d 158 (1991).

 See footnote 6.

 “Examples include an absolute refusal to consider [African-Americans] for employment, paying women a lower wage than that paid a man for the same work, and discharging a Spanish-sumamed employee for an offense for which [Anglo-Americans] are given lesser or no discipline.” ABA Section of Labor and Employment Law, Employment Discrimination Law (2d Ed. 1983) p. 1 n.l.

 “The disparate impact theory applies to patterns and practices [that] are facially neutral but discriminatory as applied, and does not require evidence of subjective intent to discriminate.” Miko v. Commission on Human Rights & Opportunities, supra, 220 Conn. 202 n.8; see Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 (k) and (l); Griggs v. Duke Power Co., 401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971).

 “A classic example is a departmental seniority structure where the employer has departments of varying desirability. If prior to the relevant time frame, the employer hired minorities only into the least desirable departments, and thereafter either flatly barred transfers between the departments or required a forfeiture of seniority as a condition of transfer, a minority employee would be effectively locked into an undesirable department, in which he had originally been placed as a consequence of discrimination. The legality of the seniority structure would then depend on whether it was ‘bona fide. ’ ” ABA Section of Labor and Employment Law, Employment Discrimination Law (2d Ed. 1983) p.1 n.2.

 This theory pertains to discrimination based on religion (title VII of the Civil Rights Act of 1964, § 701 [j], 42 U.S.C. § 2000e [j]) or mental or physical disability (Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.), where an employer is obligated to make a “reasonable accommodation.” See Ansonia Board of Education v. Philbrook, 479 U.S. 60, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986).

 In Miko v. Commission on Human Rights & Opportunities, supra, 220 Conn. 203, we incorrectly identified “direct evidence” as an analytical theory of discrimination. “Direct evidence” is not a theory of liability, but rather a means by which a plaintiff may prove discriminatory intent. See footnotes 15 and 16 of this opinion.

 The nomenclature “disparate treatment” is occasionally used in a specific manner as a synonym for the McDonnell Douglas-Burdine model of analysis. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In fact, this specific use of the term was employed by this court in Miko v. Commission on Human Rights & Opportunities, supra, 220 Conn. 202. It is more accurate, however, to describe the McDonnell Douglas-Burdine model as merely one form of the disparate treatment analysis.

 This analytical framework has on occasion been referred to as the “direct evidence” theory of discrimination. The designation of this analysis as “direct evidence” is misleading. For example, in applying New York’s *105 employment discrimination law, which is similar to General Statutes § 46a-60, the Second Circuit Court of Appeals concluded that, under the Price Waterhouse model, aplaintiff may utilize both “direct evidence” and circumstantial evidence to prove that an employment decision was made “because of’ or motivated by impermissible factors. Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1187 (2d Cir. 1992).

 Some treatises identify a third mode of proof — systematic motivation based on statistical patterns. See M. Player, Employment Discrimination Law (1988) p. 339; see also Hazelwood School District v. United States, 433 U.S. 299, 97 S. Ct. 2736, 53 L. Ed. 2d 768 (1977); Teamsters v. United States, 431 U.S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977).

 The plurality in Price Waterhouse discusses the defendant’s burden in terms of an “affirmative defense,” rather than a burden of production and persuasion. There is no substantive difference between the two terminologies. Specifically, in a mixed-motive case, the plaintiff has the burden of persuading the fact finder that the defendant’s employment decision was motivated at least in part by an impermissible factor, while the defendant bears the burden of persuading the fact finder that the same decision would have been reached absent the impermissible factor.

 The 1991 amendment to the federal Civil Rights Act of 1964 modified the holding of Price Waterhouse. Under the amendment, in mixed-motive cases, an unlawful employment practice is proven when the plaintiff demonstrates that an impermissible factor was a motivating factor for an employment decision, even though other factors also motivated the decision. 42 U.S.C. § 2000e-2 (m). An employer may limit the plaintiffs remedy to declaratory relief, injunctive relief, and/or attorney’s fees if it can demonstrate that it would have taken the same action in the absence of the impermissible motivating factor. 42 U.S.C. § 2000e-5 (g) (B). Thus, the 1991 amendment provides at least a limited remedy once the plaintiff proves that an impermissible factor played a motivating role in the employment decision. Tyler v. Bethlehem, Steel Corp., supra, 958 F.2d 1181. Our use of Price Waterhouse *107 today remains unaffected by the 1991 amendment because our legislature has not revised the remedies available under the Connecticut statute.

 This standard is not rigid; the prima facie elements should be modified appropriately depending on the respective factual scenario. Texas Dept. of Community Affairs v. Burdine, supra, 450 U.S. 253 n.6.

 The Appellate Court, incorrectly concluded that the plaintiff had failed to present any direct evidence of discrimination. Levy v. Commission on Human Rights & Opportunities, supra, 35 Conn. App. 483.

 The hearing officer found that “[the plaintiffs] job history as a truck driver amply supports [ESPN’s] belief that [the plaintiff] posed a substantial safety risk as a truck driver.”

 Oí course, if the plaintiff did not possess the level of hearing required by the federal regulations; see footnote 4; then no analysis under any of the employment discrimination theories would be required. Because a certain level of hearing is a BFOQ, any legitimate employment action based on an individual’s lack of requisite hearing ability is not impermissible discriminatory conduct under our statute.