[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In a one count complaint, filed on June 24, 1996, the plaintiff, Diane Massey, alleges that the defendant, Connecticut Mental Health Center, "has harassed, retaliated and discriminated against the plaintiff in her employment because of her race, sex and sexual orientation in violation of [General Statutes] 46a-58,46a-60 (a)(1), 46a-60 (a)(4), 46a-70 (a), 46a-81 (c) and 46a-81
(h). . . . "(Complaint, ¶ 14.) Specifically, the plaintiff alleges that her supervisor, Thomas F. White, subjected her to profanities, threatened other employees in an effort to cease their association with the plaintiff, and lastly, that he assaulted the plaintiff on April 26, 1996, causing her to suffer bruising to her shoulder and upper back. The plaintiff further alleges that "[a]ll of the aforesaid incidents, and many others, CT Page 9615 were reported to management of the defendant but [she] was afforded no relief whatever and said White continued to be maintained in a position to inflict harassment and injury upon the plaintiff." (Complaint, ¶ 11.) The plaintiff also alleges that she was fired in retaliation for he complaints and the commencement of a civil action against the defendant. (Complaint, ¶ 13.)
The defendant denies all the plaintiff's allegations. At trial. and after her evidence the plaintiff withdrew paragraphs 6, 7, 8, 9, 10 and 13 of her complaint which disposed of any claims for alleged acts occurring after September 8, 1995, the date the plaintiff filed her complaint with the Commission of Human Rights and Opportunities ("CHRO"). Under section 46a-100[1]
CHRO released complainant to file suit in court for violation of § 46a-60. The case accordingly was tried as a case of alleged hostile environment sex and race discrimination.[2] Any claims made therefore that she was fired in retaliation for her complaints paragraph 13 were eliminated.
The court therefore tried this matter under § 46a-60
(a)(1) and (a)(4) which provides in pertinant part as follows:
(a) It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness; . . .(4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice or because he has filed a complaint or testified or assisted in any proceeding under section 46a-82,46a-83 or 46a-84;
The defendant argues in its post trial brief "Section 46a-60
does not cover discrimination on the basis of sexual orientation. Such claims are covered by different provisions and cannot be brought pursuant to Section 46a-100. See Conn. Gen. Stat. §46a-99; Coleman v. State Dept. of Corrections, CaseBase, CV CT Page 9616 94539897 (March 14, 1996) (Where alleged conduct violates §46a-60 (a), not § 46a-70 (a), the plaintiff may not petition the Superior Court for relief pursuant to § 46a-99 but must go through the CHRO and obtain a release to file an action under § 46a-100.) The Court therefore has no jurisdiction to hear claims of discrimination on the basis that the plaintiff is gay."
The Connecticut Supreme Court has examined federal case law interpreting Title VII provisions for guidance in enforcing Connecticut's anti-discrimination statute. Levy v. Commission onHuman Rights Opportunities, 236 Conn. 96, 103, 671 A.2d 349
(1996); State v. Commission on Human Rights Opportunities,211 Conn. 464, 470, 559 A.2d 1120 (1989). While this case law is not binding, this court may rely on federal case law in determining the issue presented in the instant matter. State v Commission onHuman Rights Opportunities, supra, 470.
"Title VII prohibits discrimination on the basis of race and sex with respect to the `compensation, terms, conditions, or privileges of employment. ' 42 U.S.C. § 2000e (a)(1)."Torres v. Pisano, 116 F.3d 625, 630 (2d Cir. 1997), cert. denied, ___ U.S. ___, 118, S.Ct. 563, 139 L.Ed.2d 404 (1998). "[T]he elements and burden of proof that a Title VII plaintiff must meet are the same for racially charged harassment as for sexually charged harassment."
Id., quoting Harrison v. Metropolitan Gov't of Nashville andDavidson County, 80 F.3d 1107 (6th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996). Accordingly, the following analysis will apply to the plaintiff's claims of harassment based on race, sex and sexual orientation.
I. Harassment Claims
"An employee plaintiff suing under Title VII may state a claim of discriminatory harassment based upon a hostile work environment by alleging (1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment . . . and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. . . ." (Citations omitted.) Murray v. New York University College ofDentistry, 57 F.3d 243, 249 (2d Cir. 1995); see Torres v. Pisano,
supra, 116 F.3d 630-31; Karibian v. Columbia University,14 F.3d 773, 779 (2d Cir. 1994), cert. denied, 512 U.S. 1213, 114 S.Ct. CT Page 9617 2693, 129 L.Ed.2d 824, on remand, 930 F. Sup. 134 (1994). The United States Supreme Court, in Meritor Sav. Bank, FSB v. Vinson,477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), established "that employers are not always liable for the hostile work environment created by their employees. . . . And, lack of notice and the existence of complaint procedures do not automatically insulate an employer from liability." Karibian v. ColumbiaUniversity, supra, 779.[3]
"Whether the harassing conduct of a supervisor or coworker should be imputed to the employer is determined in accordance with common-law principles of agency." Murray v. New YorkUniversity College of Dentistry, supra, 57 F.3d 249. However, a "rule of employer liability deriving from traditional agency principles cannot be reduced to a universal, pat formula."Karibian v. Columbia University, supra, 14 F.3d 779. Various considerations, such as whether the alleged harasser is the plaintiff's supervisor rather than a co-worker, may affect the analysis applied by the trial court. Id., 779-80.
As a general rule, though, an employer is liable for torts committed by its employees "while acting in the scope of their employment, or, if not acting in the scope of employment, if the employee purported to act or to speak on behalf of the principles and there was reliance upon apparent authority or he was aided in accomplishing the tort by the existence of the agency relation." (Internal quotation marks omitted.) Karibian v. ColumbiaUniversity, supra, 14 F.3d 780; see Torres v. Pisano, supra, 116 F.3d 634; Restatement (Second) of Agency §§ 219(1) (2)(d) (1958). "In contrast, where a low level supervisor does not rely on his supervisory authority to carry out the harassment, the situation will generally be indistinguishable from cases in which the harassment is perpetrated by the plaintiff's co-workers; consequently . . . the employer will not be liable unless the employer either provided no reasonable avenue for complaint or knew of the harassment and did nothing about it." (Internal quotation marks omitted.) Karibian v. Columbia University, supra, 14 F.3d 780; see Torres v. Pisano, supra, 116 F.3d 634; Kotcherv. Rosa Sullivan Appliance Center. Inc., 957 F.2d 59 (2d Cir. 1992).
The plaintiff argues that there is no serious dispute that (1) Thomas White ("White") abused the plaintiff, (2) that the abuse was racial and severe in nature (3) management knew about the abuse but consistently and deliberately refused to do CT Page 9618 anything meaningful about it and (4) the plaintiff suffered extreme emotional distress as a result.
Turning to the merits of the present case, the plaintiff has not met her burden of proof with respect to the alleged harassment by her supervisor, Thomas White. As a threshold matter, the court finds that the plaintiff's version of the events leading to this action were not supported by the evidence. Not only is the plaintiff's testimony not credible, the inconsistent testimony of the plaintiff's proffered witnesses does not further the plaintiff's cause.[4] See D'Angelo v.McGoldrick, 239 Conn. 356, 365, 685 A.2d 319 (1996) (weighing evidence and determining credibility of witness is the function of trier of fact); see also Lord v. Lord, 44 Conn. App. 370, 376,689 A.2d 509, cert. denied, 241 Conn. 913, 696 A.2d 985 (1997);Greenberg v. Mortgage Services Assoc., 41 Conn. App. 882, 883,677 A.2d 984 (1996).
Secondly, not all allegations of harassment are actionable. See, e.g., Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745,753 (4th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 70,136 L.Ed.2d 30 (1996) (holding that allegations of sexual harassment did not rise to level of Title VII violation); Bennett v. NewYork City Dept. of Corrections, 705 F. Sup. 979, 983 (S.D.N Y 1989) (holding that "one isolated incident of racial animus" was not sufficient to support Title VII racial harassment claim);Miller v. Aluminum Co. of America, 679 F. Sup. 495, 502 (W.D.Pa. 1988), aff'd, 856 F.2d 184 (1988) ("Hostile behavior that does not bespeak an unlawful motive cannot support a hostile work environment claim.") "Sexual or racial harassment violates Title VII if it is sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive work environment. "(Internal quotation marks omitted.) Miller v.Aluminum Co. of America, supra, 501. "The abuse must be severe and pervasive; the incidents must be persistent, not isolated." Id. "Conduct that is merely offensive' . . . is beyond Title VII's purview." Torres v. Pisano, supra, 116 F.3d 631.
The defendant acknowledges that "two witnesses indicated that they had heard [White] use the word 'bitch' on three occasions over a five-year period."[5] (Trial brief, 6/1/98, p. 18.) Such an acknowledgment does not establish liability. "A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage." Hopkinsv. Baltimore Gas and Elec. Co., supra, 77 F.3d 753. "[T]he CT Page 9619 incidents of harassment [must] occur either in concert or with a regularity that can reasonably be termed pervasive." Bennett v.New York City Dept. of Corrections, supra, 705 F. Sup. 983.
Moreover, the use of the word, "bitch" does not automatically belie a gender based discrimination. In Galloway v. GeneralMotors Service Parts Operations, 78 F.3d 1164, 1168 (7th Cir. 1996), a case cited by the defendant, the court held that the term "bitch" is "rarely used of heterosexual males. . . . But it does not necessarily connote some specific female characteristic." Arguably, Galloway can be limited to its facts in that a coworker utilized this term in relation to another coworker due to "personal animosity arising out of a failed relationship rather than . . . a belief by [the coworker] . . . that women do not belong in the work force or are not entitled to equal treatment with male employees." Id. In the present case, however, the reasoning of Galloway is applicable because there is ample evidence to demonstrate that White's animosity towards the plaintiff was due in part to the antagonistic behavior of the plaintiff directed at White.[6] Accordingly the plaintiff has failed to prove that White's comments, while inappropriate, were so pervasive as to create a hostile work environment.
In order to hold an employer liable for the harassment perpetrated by one of its supervisors the burden is on the plaintiff to show: a) the supervisor was at a sufficiently high level in the company, or b) the supervisor used his actual or apparent authority to further the harassment, or was otherwise aided in accomplishing the harassment by the existence of the agency relationship; or c) the employer provided no reasonable avenue for complaint, or d) the employer knew (or should have known) of the harassment but unreasonably failed to stop it." Torres v. Pisano, supra, 116 F.3d 634. The merits of the plaintiff's claims fall short in each category.
A. Sufficiently High Level in Defendant Company
The defendant argues in its trial brief that White was a low level supervisor who was not sufficiently high in the hierarchy of the Department of Mental Health and Addiction Services (DMHAS) for his acts to be automatically imputed to the defendant. Ezra Griffith, a professor and deputy chairman for clinical affairs in the department of psychiatry at the Yale University School of Medicine, testified that the defendant-mental health center is a part of the large DMHAS. According to Griffith, the defendant-center employs approximately 400-500 people. (Tr., 4/21/98, p. 8.) CT Page 9620 Of those 400-500 people, White supervised approximately 30 people. White's supervisory position in the large state department is not significant. See Torres v. Pisano, supra, 116 F.3d 634 (holding that highest ranking official at remote dental center was merely a low-level supervisor whose actions cannot automatically be imputed to his employer); Kotcher v. Rose Sullivan Appliance Center Inc., supra, 957 F.2d 64 (holding that supervisor was not in upper echelon of company's management despite being highest ranking official at employment site). Accordingly, the defendant is not liable under this prong.
B. Use of Authority/Agency Relationship
"It is true that, [i]n a sense, a supervisor is always aided in accomplishing the tort by the existence of the agency because his responsibilities provide proximity to, and regular contact with, the victim. . . . But that proves too much, as it would allow the exception to swallow the rule. . . . It is likewise the case that the supervisor is always aided by the employment relationship because the employee will fear the repercussions that might result from her complaining or resisting. But this exception too, if applied in the absence of specific evidence that the supervisor used his authority to place the employee in a position in which she felt that she could not complain without facing adverse consequences, would swallow the rule. . . . Thus, in order to establish liability — on the theory that the supervisor exploited the agency relationship in committing the harassment, plaintiff must allege facts which establish a nexus between the supervisory authority and the harassment." (Citations omitted; internal quotation marks omitted.) Torres v. Pisano, supra,116 F.3d 635.
The defendant's argument is correct in maintaining that there is no evidence that White "ever used his authority or the existence of his agency relationship to further the alleged harassment." (Defendant's Trial Brief, p. 17.) As the defendant notes, cases in which this prong has been satisfied involved a direct use of the supervisor's authority. See e.g., Tomka v.Seiler Corp. , 66 F.3d 1295, 1306-07 (2d Cir. 1995) (at dinner where attendance was mandatory by supervisor, employee became intoxicated by alcohol provided by supervisor and sexually assaulted co-worker); Karibian v . Columbia University, supra, 14 F.3d 776 (supervisor informed plaintiff that she "owed him" and altered her working conditions according to her response to his sexual advances); Martin v. Cavalier Hotel Corp. , 48 F.3d 1343, CT Page 9621 1352-53 (4th Cir. 1995) (supervisor threatened to fire plaintiff if she did not submit to his sexual advances). There was no evidence produced that would establish the required nexus under this prong. Accordingly, liability cannot be attributed to the defendant on this basis.
C. Reasonable Avenue for Complaint
In this case and contrary to the claim of the plaintiff, the defendant provided a reasonable avenue for complaints that was available to, and utilized by, the plaintiff on numerous occasions. The defendant investigated the complaints and interviewed witnesses in an attempt to discover any alleged harassment. These efforts often led to the discovery that the plaintiff was verbally and physically abusing her coworkers.[7]
At trial the plaintiff submitted Exhibit A, B and C. Exhibit A, dated February 2, 1995, was a complaint alleging harassment by White. Exhibit A did not allege the use of any derogatory language toward the plaintiff by White. Exhibit B, another complaint form signed by the plaintiff on June 20, 1995, relates to the April 7, 1995 incident with coworker, Robert Russo. See footnote 7, supra. Exhibit C, another complaint form, regards the July 20, 1995 incident between White and the plaintiff. This incident led to disciplinary action against White by the defendant. There was also another complaint form that was submitted at trial. This form detailed the June 20, 1995 tape recorder incident discussed above.
The evidence produced at trial demonstrates that each complaint was fully investigated, and all the witnesses listed on each complaint form were interviewed. During the course of the investigations, no witnesses corroborated the alleged harassment based on race, gender and/or sexual orientation of the plaintiff by White. Accordingly the plaintiff did not establish liability on the basis that the defendant did not provide a reasonable avenue for complaint.
The plaintiff in this case withdrew her claim for unlawful retaliation. The plaintiff claims only now that she is entitled to damages for emotional distress she suffered as result of the defendant toleration of the hostile working environment engendered by it supervisory employee (plaintiff's brief).
The defendant in the present matter took steps to remedy, rather than exacerbate the conflict between the plaintiff and CT Page 9622 White. In addition to a thorough investigation and the discipline imposed, in an effort to minimize contact between me plaintiff and White, the defendant removed White as me plaintiff's immediate Supervisor.
White was advised even though he was still in charge of the plants operations as whole, that if further conflicts arose, he was to immediately report them rather than engage in a confrontation with the plaintiff. Also to ease any discomfort at work the plaintiff was allowed to alter her duties so that she could primarily perform as a painter which she preferred.
The "line between a merely unpleasant working environment . . . and a hostile or I deeply repugnant one" may be difficult to discern. (Internal quotation marks omitted.) Hopkinsv. Baltimore Gas and Elec. Co., supra, 77 F.3d 753. However, neither Title VII nor Connecticut's anti-discrimination law attempts "to purge the workplace of vulgarity." (Internal quotation marks omitted.) Id. The plaintiff has only established that there was some conflict with White in very isolated instances over a period spanning five years. Accordingly, the plaintiff has not sustained the burden required to prove that she was harassed due to her race, gender or sexual orientation, nordid she prove she suffered any emotional distress in the workplace.
Judgement is entered in favor of the defendant.
Frank S. Meadow Judge Trial Referee