[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 9810-ai
The plaintiff, an employee of the Naugatuck Valley Community Technical College, filed a complaint on September 2, 1999 against certain other employees at the college and against the State of Connecticut Board of Trustees of Community Colleges, claiming employment discrimination on the basis of race, in violation of Connecticut General Statutes § 46a-60
et seq. The case against the individual defendants ended when the court granted a motion for summary judgment in their favor. (Wiese, J. May 7, 2002).
As against the State, the gravamen of the complaint remains that the college discriminated against Mr. Hargrove by denying him the position of Qualified Craft Worker (Plumbing and Steam Fitting) in its maintenance department, instead giving the position to a Caucasian individual. The defendant not only denied the allegations of the complaint but also filed a special defense that the plaintiff was not qualified for the position for which he applied. The court has jurisdiction in this case because of a release of jurisdiction from the state Commission on Human Rights and Opportunities. The matter was tried to the court on May 16 and May 17, 2002.
 1 FACTS
From the evidence, the court finds the following facts were established by a preponderance of the evidence at trial.
Ted Hargrove was first hired in the maintenance department of Naugatuck Valley Community Technical College in February, 1993 as a boiler tender, an entry-level position. His background is all on-the-job training at the various positions he has held through the years since 1968 when he left a technical high school in Georgia, where he was raised. He has no specific technical school training in either area, nor does he hold any state licenses. He secured his high school equivalency diploma in 1992.
Mr. Hargrove worked initially on the first shift and was supervised by a stationary engineer and a lead stationary engineer in the performance of his duties. After a shift change and some difficulties working with other employees, Mr. Hargrove worked for some time with the Heating, Ventilating and Air Conditioning (HVAC) department under the direction of another maintenance department employee, Jubel Kishore, who holds the CT Page 9810-aj position of Qualified Craft Worker (Heating, Ventilating and Air Conditioning). Ted Hargrove assisted in the performance of some plumbing duties during that period of time. In 1994 and 1995, he complained to the union that he was working out-of-class. The matter was resolved with a short period of extra pay as a stationary engineer and a return to his boiler tender duties. The working out-of-class, Mr. Hargrove stated, did not stop and he continued to do whatever he was told to do and whatever needed doing.
Early in 1998, the maintenance department supervisor at the college, Joseph Cutrali, told Ted Hargrove there was a new position opening up in the maintenance department and that he could apply for it. Mr. Hargrove did apply and was the only internal applicant. He, along with eleven others, was interviewed, but he was not offered the position. Although he was the only minority candidate, the five member panel conducting the interviews determined he "lacked essential knowledge of plumbing code" and had "[n]o licensing credentials."[1] On August 14, 1998, Daniel Oliviera, the director of campus support services, informed Ted Hargrove by letter that he was not successful in securing the position.
Mr. Hargrove then filed a formal grievance with his union on August 20, 1998. The Step I, II and III hearings all ended with the determination that "Mr. Hargrove does not meet the minimum experience and training requirements of the Qualified Craft Worker (plumbing and steam fitting) job specification. All eleven of the [other] job applicants possessed at least a journeyman plumber's license and the applicant who was hired in fact holds both plumbing and heating licenses."[2]
Subsequent to this process, the plaintiff then filed his complaint with the Commission on Human Rights and Opportunities, which also ended without the result he sought and this lawsuit ensued.
Essentially Mr. Hargrove's claims are two-fold. The first claim is that he possesses the minimum qualifications for the job. The second is that the union contract covers internal promotions to higher level positions and that he was discriminated against by not being given the Qualified Craft Worker position, when other maintenance department employees, who were Caucasians, were internally promoted to higher level positions.
A. Qualifications
It is Mr. Hargrove's claim that both his previous work at O.Z. Gedney where he was a shop supervisor over many other employees and his work at the college performing plumbing tasks demonstrate that he has the minimal qualification for the Qualified Craft Worker position. The minimal CT Page 9810-ak qualifications for the position both as advertised and as listed in the job specifications are considerable. The posting disclosed that an "[a]pplicant must have considerable knowledge of and ability to apply standard tools, material, methods and practices of the plumbing trade, interpersonal skills, oral and written communications skills, ability to prepare estimates and keep shop records."[3] The actual description of the class of job states "in a state agency, this class is accountable for performing highly skilled duties in one or more trade areas. . . . This class is not intended to be a normal progression for all Maintainers; it should be reserved solely for agencies and facilities where trade levelskills are clearly required for a major portion of an incumbent's duties." (emphasis added.)[4]
Under plumbing and steam fitting, the job description states "performs highly skilled plumbing and steam fitting tasks in accordance with standard trade practices, assembles, installs and repairs air, gas, water, steam and sewer disposal systems; cuts, bends, reams and threads pipes; sweats cooper tubing and wipes joints; caulks and tests lines; installs and repairs gas, water, steam and sanitary fixtures; covers and insulates tanks, pipes and related objects, works with high pressure hot water systems; performs minor tests on fuel specific gravity and gas leaks; adds water treatment chemicals to boilers; may inspect and repair steam traps fed by main system in various locations; may remove pipe insulation materials associated with the repair of pipes and fitting using OSHA approved methods."[5]
In addition the minimal level of experience is four (4) years of experience in the particular trade area and two years of that experience must have been in performing skilled trade functions in the particular craft indicated. Under this area of the specification, it also lists as in the posting that the applicant must have "considerable knowledge of and ability to apply standard tools, materials, methods and practices of the plumbing trade, interpersonal skills, oral and written communications skills, ability to prepare estimates and keep shop records."
There were a total of eighteen applicants apparently meeting the minimum qualifications for the position, and twelve including Mr. Hargrove were interviewed. All of the applicants interviewed were asked to respond to the same ten prepared questions. of all the questions, only four related to knowledge of steam fitting and plumbing. Mr. Hargrove did point his experience in repairing steam lines and traps as well as his experience in high pressure hot water systems and power pipe benders and the interview form notes this. He was able after some hesitation to indicate the correct solder for domestic water systems. From the CT Page 9810-al assessment of the interviewers and the standard form completed for all applicants interviewed, the court finds that Mr. Hargrove was among the least qualified of the applicants for the position.
Mr. Hargrove failed to point out his past supervisory experience to the interviewing panel when he was interviewed for the craft worker position. The resume filed with his application did list his O-Z Gedney experience, but did not mention plumbing experience or the plumbing duties he states he performed during his time at the college. When questioned about his failure to discuss and point to his relevant experience, he was adamant that, because three of the five individuals on that panel were also among those who originally interviewed him for the boiler tender position in 1993 they knew of his experience as he had mentioned it at that time. This, the court cannot credit, since five years is a very long time for other people to keep in the forefront of their minds the direct and detailed qualifications of another employee. Further, while he testified to the plumbing chores he performed under supervision while at the college, he also did not mention these specifically during the interview, claiming again that all except for the affirmative action officer were familiar with his work. The court concludes that the interview was Ted Hargrove's opportunity to present and review in detail all of his experience and qualifications for the new position and that he did not do so.
During the course of the five years he was employed at the college prior to his job interview, the plaintiff did perform what could be labeled plumbing-related jobs. He repaired and replaced some radiator units as well as heating and air-conditioning units. He replaced some broken pipe and old water valves. He replaced one or two air compressors and changed some thermostats. He helped install a water meter and once read some blueprints to locate a shut-off valve. Jubel Kishore, the HVAC employee at the college, stated that the HVAC and plumbing systems are related and work together, but the court concludes that much of the work listed can also be viewed as HVAC work. Neither he nor the plaintiff worked on toilets or the sanitary sewer system.
Joe Cutrali, the maintenance supervisor at the college, stated that the jobs the plaintiff performed were general maintenance jobs that a boiler tender would perform and within his job classification.[6] The court concludes that whatever label can be ascribed to the plumbing related tasks the plaintiff had performed in the past, they cannot be classified as "highly skilled" in the trade area, nor did the plaintiff ever perform them alone on his own initiative without supervision. CT Page 9810-am
The court concludes that Mr. Hargrove could at best only be considered very minimally qualified for the position. He had no trade school education in plumbing, did not hold any plumbing licenses nor did he possess any experience, which could be substituted for the formal educational and licensing requirements for this job as required in the job description and job specifications.
B. Internal Promotions and the Union Contract
The second prong of the plaintiff's case is that his claim that the position of Qualified Craft Worker was a promotion that should have been his through the normal progression within the job hierarchy and pursuant to the union contract. The evidence does not support this claim by a preponderance of the evidence. The court finds that the chain of command or hierarchy within the plaintiff's job classification as boiler tender was as follows: (1) boiler tender, then (2) stationary engineer and finally, (3) lead stationary engineer. There is no point at which this progression leads to Qualified Craft Worker (Plumbing and Steam Fitting). And indeed, the job specification also specifically indicates that the craft worker position is not to be used in the normal progression of increasingly expert jobs and trained workers. Had the plaintiff been applying for the position of stationary engineer, this portion of his claim would have had more merit than it does with respect to the Qualified Craft Worker position in question.
The second part of this portion of the plaintiff's claim is that the union contract provides that this job should have been his automatically and he was denied it based upon discrimination due to his race. It was based on his misplaced expectations that Mr. Hargrove was astonished to be required to answer questions during the interview process and why he had what some of the interviewing panel members found to be a "bad attitude" in the interview itself.
The union contract itself provides in its definition of vacancies that "each vacancy must first be filled by transfer from within the agency," unless an employee has recall rights. The contract states that "any employee seeking a transfer or promotion to another position within the agency "shall be given preference over new hires unless there is a significant difference in qualifications."[7] Section five of the contract goes on to provide that, after consideration of affirmative action goals, vacancies shall be filled on the basis of greater seniority, unless in the reasonable judgment of the employer, there is a significant difference in the qualifications or the work records of those seeking the position. . . . Additionally, the employer shall not be CT Page 9810-an required to select an employee who (1) does not meet the minimumrequirements for the job . . . (3) does not have permanent status in thenext lower grade . . . (4) does not have the skills required for thejob."[8] (Emphasis added.)
This brief cursory perusal of an applicable section of the union contract indicates that, even had Mr. Hargove been in the next lower position within a hierarchy of job classifications, there might still have been legitimate reasons why the job would not automatically have become his. Had this been in the normal progression of promotions from boiler tender, it would have had to have been for stationary engineer and not Qualified Craft Worker.
The court concludes that this second prong of the plaintiff's claim must also fail. Under the facts established, the court has concluded that the position of Qualified Craft Worker (Plumbing and Steam Fitting) was not in the hierarchy of job classifications in which the plaintiff was employed, and therefore, there should not have been any expectation that the position would "automatically" become his. As Mr. Cutrali pointed out, it was a normal "courtesy" extended to anyone interested in promotions in the department to permit them to be interviewed for an open position. The court finds that this is the action the defendant college took. It is this courtesy interview which Mr. Hargrove misunderstood as indicating the position was his, the denial of which he then interpreted as discriminating against him impermissibly on the basis of race.
C. Defendant's Motion to Dismiss for failure to make out a Prima Facie Case
Defendant claims in its special defense that the plaintiff is not qualified for the position of Qualified Craft Worker (Plumbing and Steam Fitting). In an ordinary case not concerning discrimination, any defendant would have the burden of proof with respect to any special defenses. Nonetheless, in this discrimination case, at the close of the plaintiff's case, the defendant moved to dismiss, claiming that the plaintiff had not established a prima case of discrimination. At the time, the court took the motion under advisement.
Pursuant to the Connecticut Fair Employment Practices Act, General Statutes § 46a-60 (a)(1), it is unlawful "[f]or an employer . . . except in the case of a bona fide occupational qualification . . . to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . physical disability. . . ." It is also CT Page 9810-ao unlawful "[f]or any . . . employer . . . to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice. . . ." General Statutes § 46a-60 (a)(4).
Although the plaintiffs claim is based on alleged violations of a state statute, "in interpreting the [Act], the Connecticut courts apply federal case law dealing with federal anti-discrimination statutes for the purpose of applying and analyzing the essential elements of a discrimination claim. . . ." see Board of Education v. Commission onHuman Rights and Opportunities, 176 Conn. 533, 527, 409 A.2d 1013
(1979); Pik-Wik Stores, Inc. v. Commission on Human Rights andOpportunities, 170 Conn. 327, 330, 365 A.2d 1210 (1976); see also AnnHoward's Apricots Restaurant v. Commission on Human Rights andOpportunities, 237 Conn. 209, 224-26, 676 A.2d 844 (1996) (applying the federal standard).
"Under federal law, there are four general theories of employment discrimination: disparate treatment, adverse or disparate impact, perpetuation into the present of the effects of past discrimination, and failure to make reasonable accommodation . . . To date, in Connecticut, we have recognized the disparate treatment and adverse impact theories of employment discrimination." Levy v. Commission on Human Rights Opportunities, supra, 236 Conn. 103-104.
Ted Hargrove's claim is one of disparate treatment. Used in this general sense, "disparate treatment" simply refers to those cases where certain individuals are treated differently than others. In such case, the principal inquiry is whether the plaintiff was subjected to different treatment because of his protected status. In such cases, there are two general methods to allocate the burdens of proof: (1) the mixed-motive/Price Waterhouse model; Price Waterhouse v. Hopkins,490 U.S. 228, 246, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); and (2) the pretext/McDonnell Douglas-Burdine model. Texas Dept. of Community Affairsv. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981);McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817,36 L.Ed.2d 668 (1973).
This case requires the McDonnell Douglas-Burdine model because the plaintiffs claim is based on pretext. Under this model, the law provides that in an action of racial discrimination under Title VII of the Civil Rights Act of 1962 or pursuant to the Connecticut Fair Employment Act, Connecticut General Statutes § 46a-51, et. seq., any plaintiff must first establish, by a preponderance of the evidence, a prima facie case CT Page 9810-ap by showing four things:
 1) membership in a protected class; 2) an adverse employment action, 3) the filling of the position by a person not of the protected class; and 4) qualification for the position. Scaria v. Rubin, 117 F.3d 652, 653 (2nd Cir. 1997).
"This methodology is intended to provide guidance to fact finders who are faced with the difficult task of determining intent in complicated discrimination cases. It must not, however, cloud the fact that it is the plaintiffs ultimate burden to prove that the defendant intentionally discriminated . . . See St. Mary's Honor Center v. Hicks, 509 U.S. 502,519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("the factfinder must believe the plaintiffs explanation of intentional discrimination"); Texas Dept.of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089,67 L.Ed.2d 207 (1981) ("[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff"); Craine v. Trinity College,259 Conn. 625, 637, 791 A.2d 518 (2002)
While the defendant admits that three of the four prongs are met here by the facts, it claims that the plaintiff has not demonstrated he is qualified for the position and that therefore he has not made out a prima facie case. The court agrees that, despite Mr. Hargrove's own firmly held conviction to the contrary, he does not possess the minimal job qualifications for the position of Qualified Craft Worker (Plumbing and Steam Fitting). Nonetheless, the court finds that the plaintiff did present some evidence from which a tier of fact could conclude that he has the qualifications for the position. It is only after a careful review of those facts and the opposing facts that the court has reached the conclusion that he has not established his qualifications by a preponderance of the evidence, not the standard required to successfully meet a motion to dismiss. This is so because the burden of proof required to establish a prima facie case is minimal. See Cruz v. Coach Stores,Inc., 202 F.3rd 560, 567 (2nd Cir. 2000). In the present case, the court finds the plaintiff established a prima facie case of discrimination, because he established some facts that he was minimally qualified, but failed to carry his ultimate burden of proving that the college's failure to hire him was motivated by illegal racial discrimination. The court therefore denies the motion to dismiss.
D. The Balance of the Plaintiff's Case CT Page 9810-aq
Once the plaintiff has made out a prima facie case of discrimination, there is a presumption that he was discriminated against unlawfully. "The establishment of a prima facie case creates a rebuttable presumption of discriminatory intent." Lieberman v. Gant, 630 F.2d 60, 63 (2d Cir. 1980). The burden-shifting analysis is set out by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792,93 S.Ct. 1817, 36 L.Ed. Page 637 2d 668 (1973). After the establishment of the prima facie case by the plaintiff, the employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias. Id., 802-804.
By concluding, as the court has, that the plaintiff was not qualified by either training or experience for the employment position he sought, the court has found that the college has rebutted his prima facie case and proven a legitimate, nondiscriminatory justification for the employment decision in question. The evidence demonstrated that the person hired for the job met many of the stated requirements for the position. Mr. DiLegge received his plumbing license in 1975, his heating license in 1980 and has worked in residential and commercial plumbing and heating since 1977, more than twenty years. He has supervised many others in such activities during those years. It is admitted that he does not have experience on high pressure hot water systems.
The plaintiff had the burden of proof as to the last portion of theMcDonnell Douglas analysis, which is that the employee, after a legitimate reason has been shown, must then demonstrate that the reason for the employment decision given by the defendant was mere a pretext and that the hiring was motivated by illegal discriminatory bias. The plaintiff presented no such evidence. The court concludes that it is through unfortunate misunderstandings, both of the normal job progression and the union contract requirements, that the plaintiff has reached the conclusion that there was discrimination in the college's failure to promote him. The evidence has demonstrated that Ted Hargrove performed well as a boiler tender in the years he has been at the college. Unfortunately for his claim, that work does not, without additional training and licensing, prepare him to meet the requirements of the position of Qualified Craft Worker (Plumbing and Steam Fitting).
For all the foregoing reasons, the court finds for the plaintiff has not established his claim of employment discrimination on the basis of CT Page 9810-ar race, in violation of Connecticut General Statutes § 46a-60 et seq. The court finds for the defendant, Naugatuck Valley Community Technical College, an institution operated by State of Connecticut Board of Trustees of Community Colleges.
BY THE COURT
BARBARA M. QUINN, Judge