******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES EX REL. JULISSA CORTES *v.* MARGARET VALENTIN
## (AC 43887)

Bright, C. J., and Elgo and DiPentima, Js.

*Syllabus*

The intervening plaintiff C filed a complaint with the plaintiff Commission on Human Rights and Opportunities alleging discrimination in housing against the defendant. The commission filed a complaint in the trial court, claiming that the defendant had engaged in a prohibited discriminatory housing practice pursuant to statute (§ 46a-64c (a) (1) and (3)) by denying C an opportunity to rent or view a rental property and making discriminatory statements about C's ability to rent the property on the basis of a lawful source of income, a voucher pursuant to section 8 of the National Housing Act (42 U.S.C. § 1437f). The defendant, who had told C that the property was not "section 8 ready," also claimed that C's credit score, which C had reported as "fair," did not meet her requirements. The court rendered judgment in favor of the commission and C, and the defendant appealed to this court. *Held*:

1. The defendant could not prevail on her claim that there was insufficient evidence in the record to support the trial court's conclusion that the defendant violated subdivisions (1) and (3) of § 46a-64c (a):

   a. There was sufficient evidence to support the trial court's conclusion that the defendant had engaged in a prohibited discriminatory housing practice pursuant to § 46a-64c (a) (1): testimony by a previous tenant that he did not provide the defendant with his credit score prior to viewing the property supported the court's finding that the defendant did not have a legitimate, nondiscriminatory reason for failing to show C the rental property; moreover, this court declined to review the defendant's unpreserved challenge to documentary evidence from individuals who had posed as prospective tenants to determine whether her actions toward C were legally actionable and testimony related to those prospective tenants, as she did not make any objections to that evidence or testimony during the trial, and this court declined to assess the weight of the documentary evidence, which was the sole province of the trial court; furthermore, the court determined that the defendant's proffered reason of refusing to allow C to view the rental property because of her credit score was questionable and that, even if the defendant had a legitimate credit score policy, she had applied it in a discriminatory fashion to C, as there was evidence that she did not ask prior tenants without section 8 vouchers for their credit scores prior to showing them the property or accepting rental applications from them.

   b. The trial court's factual finding that the defendant's statement that the rental property "was not section 8 ready" conveyed to an ordinary listener an intent to discriminate against prospective tenants with section 8 vouchers in violation of § 46a-64c (a) (3) was not clearly erroneous; the statement was facially discriminatory, thus, the court was not required to examine the surrounding context or the defendant's intent to determine whether the statement indicated any impermissible inference, and the court considered evidence in the record that the defendant gave applications to, held open houses for and agreed to rent the property to individuals who did not receive section 8 vouchers as well as testimony that it was discriminatory to show a property only to tenants without section 8 vouchers or to decline to rent to section 8 recipients by using coded language.

2. The trial court did not abuse its discretion in awarding C compensatory damages for emotional distress; the court considered C's testimony regarding her emotional pain and suffering, including that the property C eventually rented was inferior and dissimilar to the defendant's rental property and that C's son was required by the location of the new property to attend school in a district in which he experienced bullying.

3. The trial court did not abuse its discretion in denying the defendant's application for a writ of audita querela and denying her motion for

reargument and reconsideration of that decision:

a. The trial court did not abuse its discretion in declining to hold a hearing on the defendant's application, the defendant having failed to make the showing necessary of a new matter raisable for the first time after judgment; the issues raised in the application, including whether the defendant had asked a previous tenant for his credit score prior to showing him the rental property, whether C's son experienced bullying at school, whether the defendant had informed C's boyfriend that the rental property was not section 8 ready and the extent of C's physical symptoms of emotional distress, reasonably could have been and were raised and litigated during the trial.

b. The defendant could not prevail on her claim that the trial court abused its discretion in denying her motion for reargument and reconsideration, as she failed to establish that the court overlooked a controlling principle of law, misapprehended relevant facts or otherwise abused its discretion in denying her application for a writ of audita querela.

Argued February 28—officially released July 5, 2022

*Procedural History*

Action to recover damages for alleged housing discrimination, and for other relief, brought to the Superior Court in the judicial district of Hartford, Housing Session, where the court, *Shah, J.*, granted the motion to intervene filed by Julissa Cortes; thereafter, the matter was tried to the court, *Shah, J.*; judgment for the plaintiffs, from which the defendant appealed to this court; thereafter, the court, *Shah, J.*, denied the defendant's application for a writ of audita querela, and the defendant filed an amended appeal. *Affirmed*.

*Margaret Valentin*, self-represented, the appellant (defendant).

*Pamela A. Heller*, with whom were *Jeffrey Gentes*, and, on the brief, *Cullen W. Guilmartin* and *Nicholas M. Varney*, for the appellee (intervening plaintiff).

*Margaret J. Nurse-Goodison*, human rights attorney, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant, Margaret Valentin,[1] appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, the Commission on Human Rights and Opportunities (commission), and the intervening plaintiff, Julissa Cortes, in this action alleging housing discrimination in violation of General Statutes § 46a-64c (a). The defendant claims that (1) there was insufficient evidence to support the court's conclusion that she had violated § 46a-64c (a) by engaging in discriminatory housing practices, (2) the court abused its discretion in awarding Cortes compensatory damages for emotional distress and (3) the court (a) improperly failed to conduct an evidentiary hearing prior to denying her application for a writ of audita querela and (b) abused its discretion in denying her motion for reargument and reconsideration of that application. We affirm the judgment of the trial court.

The following facts, as found by the trial court or as otherwise undisputed in the record, and procedural history are relevant. In July, 2016, Cortes' landlord informed her that the property in which she then resided in East Hartford was being sold. In that same month, Cortes sent the defendant a message via the website Zillow to schedule a viewing of the defendant's rental property in East Hartford and inquired whether she would accept a voucher pursuant to section 8 of the National Housing Act (section 8), 42 U.S.C. § 1437f. After receiving no response, Cortes called the defendant to schedule a viewing and indicated that she intended to use a section 8 voucher. The defendant responded that the rental property "was not section 8 ready." Cortes had Victor Irizarry, the father of her three children, call the defendant regarding the rental property. The defendant told Irizarry that the rental property "wasn't section 8 ready," and that she "just didn't want to deal with the paperwork."

Cortes' section 8 worker referred her to the Connecticut Fair Housing Center (center). Maria Cuerda, a fair housing specialist with the center, called the defendant regarding her refusal to allow Cortes to view the rental property. The defendant informed Cuerda that the rental property would not qualify for section 8, that she had the right to rent to whomever she wanted and that she was not interested in getting the rental property approved for prospective tenants with section 8 vouchers. Cuerda informed the defendant that it constituted a discriminatory housing practice to refuse to rent to prospective tenants on the basis of their intent to use a section 8 voucher. Cortes texted the defendant to request a viewing of the rental property. The defendant responded that, before she could schedule a viewing, she needed additional information, including Cortes' credit score. Cortes replied that she had a "fair" credit score. The defendant told Cortes that her "[c]redit

doesn't meet my requirements," and did not provide Cortes with an opportunity to view the rental property. On October 1, 2016, Cortes moved into a different rental property in East Hartford. The defendant rented her East Hartford property to another prospective tenant, Charles Stewart, who did not receive section 8 federal housing assistance and who moved into the rental property on October 1, 2016.

The commission brought an action on behalf of Cortes claiming that the defendant had violated subdivisions (1) and (3) of § 46a-64c (a) by discriminating against Cortes by denying her an opportunity to rent or view the rental property and by making discriminatory statements regarding Cortes' ability to rent the property on the basis of a lawful source of income, her section 8 voucher.[2] Pursuant to Practice Book § 9-18, Cortes filed a motion to intervene as a plaintiff, and the motion was granted by the court.

Following trial, the court issued a memorandum of decision on January 30, 2020, in which it determined that the defendant had violated § 46a-64c (a) (1) and (3), awarded Cortes $7500 in noneconomic damages for emotional distress and ordered the defendant to pay a $5000 civil penalty to the commission. Specifically, as to § 46a-64c (a) (1), the court concluded that the defendant's failure to allow Cortes to rent or view the rental property was on account of Cortes' status as a recipient of a section 8 voucher and therefore constituted a discriminatory housing practice. The court found that the defendant's proffered legitimate reason for not showing Cortes the rental property—that Cortes had not satisfied her credit score criteria—was "unavailing." The court determined that the defendant's reasoning that she would not rent to anyone with a credit score of less than 700 was belied by the fact that the defendant did not know Cortes' actual credit score, but rather only knew that Cortes had described her credit score as being "fair." The court further reasoned that the defendant's "denial of Ms. Cortes is further undercut by her testimony that it was 'irrelevant' to her whether Ms. Cortes had the ability to pay, even if her section 8 voucher covered 100 percent of the rent, because she assumed Ms. Cortes' credit was not up to her 'criteria.' . . . Even if [the defendant] had a legitimate credit score policy, she applied it in a discriminatory fashion to . . . Cortes because [the defendant] never asked her three prior tenants for their credit score prior to showing or accepting an application from them to rent the home."

The court also concluded that the defendant's statements to Cortes that the rental property "was not section 8 ready" conveyed to an ordinary listener a preference for tenants who did not receive section 8 vouchers in violation of § 46a-64c (a) (3). The court determined that the defendant's proffered reason for having made

those statements—that no one could rent the property because the furnace needed repair—was "transparent." The court found that, during the same time period in which the defendant claimed the furnace needed repairs, she gave applications to, held open houses for and agreed to rent the property to prospective tenants who did not receive section 8 vouchers, and the defendant and Stewart both testified at trial that all repairs were completed prior to the move in date of October 1, 2016, that was proposed by Cortes. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that there was insufficient evidence to support the court's conclusion that she had violated subdivisions (1) and (3) of § 46a-64c (a) by engaging in discriminatory housing practices. In furtherance of her argument, she contends that some of the court's subordinate factual findings were clearly erroneous. We are not persuaded.

Section 46a-64c (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section: (1) . . . to refuse to negotiate for the . . . rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . lawful source of income . . . . (3) To make . . . or cause to be made . . . any . . . statement . . . with respect to the . . . rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . lawful source of income . . . or an intention to make any such preference, limitation or discrimination. . . ."

We first set forth the standard of review. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . Although we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . we will not uphold a factual determination if we are left with the definite and firm conviction that a mistake has been made." (Citations omitted; internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 322, 796 A.2d 516 (2002).

The law applicable to this claim is well established. The court stated that there was direct evidence of discrimination and employed the mixed-motive disparate treatment theory. "Used in this general sense, disparate treatment simply refers to those cases where certain individuals are treated differently than others. . . .

The principal inquiry of a disparate treatment case is whether the plaintiff was subjected to different treatment because of his or her protected status. Under the analysis of the disparate treatment theory of liability, there are two general methods to allocate the burdens of proof: (1) the mixed-motive/*Price Waterhouse* model;[3] *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 246, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989); and (2) the pretext/ *McDonnell Douglas–Burdine* model. *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 252–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).'' (Citation omitted; footnote in original; footnote omitted; internal quotation marks omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 104–105, 671 A.2d 349 (1996). "Under *Price Waterhouse*, a plaintiff alleging discrimination must show as part of her prima facie case that she is a member of a protected class and that an impermissible factor motivated the defendant in making the adverse decision. . . . Once the plaintiff has made this showing, the burden then shifts to the defendant to show, by a preponderance of the evidence, that it would have made the same decision even in the absence of the impermissible factor. . . . [I]t is not sufficient for the defendant to show that a legitimate, nondiscriminatory reason would have justified the decision. . . . A defendant may prevail in a mixed motives case only if it can show that it actually was motivated, at the time that the decision was made, by a legitimate reason and that its legitimate reason, standing alone, would have induced it to make the same decision.'' (Citations omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Sullivan*, 285 Conn. 208, 228–29, 939 A.2d 541 (2008).

A

The defendant claims that the court's conclusion that she had engaged in a prohibited discriminatory housing practice pursuant to § 46a-64c (a) (1) "lacks the proper and reliable evidentiary support.'' Specifically, she argues that the court's (1) subordinate factual findings were clearly erroneous, (2) reliance on certain documentary evidence was "impermissible'' and (3) ultimate conclusion regarding § 46a-64c (a) (1) was not supported by sufficient evidence. We are not persuaded.

1

The defendant contends that the court's finding that she had not asked her prior tenants for their credit scores before showing them the rental property was clearly erroneous.[4] She argues that the trial testimony of Caleb Vonberg, a prior tenant, indicates that she had discussed credit scores with her prior tenants before showing them the rental property and specifically highlights Vonberg's testimony that he and his wife had signed a form authorizing the defendant to obtain their

credit scores. We reject this contention. First of all, the court was not required to credit the testimony of any witness. See *Wall Systems, Inc.* v. *Pompa*, 324 Conn. 718, 741, 154 A.3d 989 (2017) (it is exclusive province of trier of fact to make determinations of credibility, crediting some, all or none of any given witness' testimony). Additionally, even had the court found Vonberg credible with respect to having authorized the defendant to obtain his credit score, this testimony at most reasonably reveals that Vonberg *at some undefined point* provided the defendant with his credit score. Notably, Vonberg further testified that he did not provide the defendant with his credit score prior to viewing the property. This testimony supports the court's finding that the Vonbergs were permitted to view the property without providing a credit score, which underlies the court's finding that the defendant did not have a legitimate nondiscriminatory reason for failing to show Cortes the rental property.

2

The defendant's next argument concerns "Rental Test Assignment Forms" (forms), which were admitted as full exhibits at trial. As we interpret her arguments, the defendant raises an unpreserved evidentiary challenge to the admissibility of the forms, which we do not review. She also challenges the reliability of the forms, which argument we reject.

By way of background, the court found that, in an effort to determine if the defendant's refusal to show or rent to Cortes was legally actionable, the center used four individuals called "testers" to pose as prospective tenants and to ask the defendant about the rental property. The center provided each of the four testers with a form. Those forms contained a section labeled "key test information" that each tester was to provide to the defendant, including whether the tester was a recipient of a section 8 housing voucher. The forms contained a narrative description written by the tester detailing the tester's interaction with the defendant regarding the rental property. The testers did not testify at trial, and Erin Kemple, the executive director of the East Hartford Housing Authority, authenticated the forms during her trial testimony. By way of her deposition transcript, which was admitted as a full exhibit at trial, Cuerda explained the testing process as well as the results obtained by the four testers. The court found that the defendant had provided the three testers who posed as prospective tenants without section 8 vouchers with an application, details regarding the application and/or a viewing of the property. The court also found that the defendant initially told the tester purporting to be a prospective tenant with a section 8 voucher that her $18,000 yearly income was sufficient, but, after that tester informed the defendant of her intent to use a section 8 voucher, the defendant informed that tester

that the rental property was not ready, did not provide her with an application and did not offer to allow her to view the rental property.

The defendant argues that the court's reliance on the forms was "tainted and erroneous under the circumstances" and that, because "case law frowns upon credibility assessments based on the cold printed record," it was improper for the court to rely on the forms and the trial testimony of Kemple and the deposition testimony of Cuerda regarding the forms. As best we can discern, the defendant is challenging the admissibility of the forms. We decline to review this unpreserved evidentiary claim regarding the admissibility of the forms and related testimony because the defendant did not make any objections at trial in this regard. See *State* v. *Golding*, 213 Conn. 233, 241, 567 A.2d 823 (1989) ("once identified, unpreserved evidentiary claims . . . will be summarily dismissed"). We note that, although the defendant highlights case law that cautions appellate tribunals that the finder of fact is the best judge of credibility and that it is inappropriate to assess credibility from the cold printed record; see, e.g., *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 111, 890 A.2d 104 (2006); such case law does not prevent a trial court from considering documentary evidence admitted without objection at trial.

The defendant also argues that "there does not appear to be any checks and balances to ensure that the testers are in compliance with the testing guidelines" and points to alleged inaccuracies in the testing forms, including that one tester indicated in one location on the form that a change in the rental amount was attributable to snow removal while stating in a different location on the form that the defendant had not provided a reason for the change in the rental amount. The defendant, who did not call the testers to testify at trial, cannot prevail on her argument challenging the reliability of the forms. The alleged inaccuracies go to the weight of the forms, and we decline the defendant's attempt to relitigate the case by asking this court to assess the weight of the documentary evidence at issue, which task is within the sole province of the trial court. "The weight given the evidence before it is within the sole province of the trial court." *Dubicki* v. *Dubicki*, 186 Conn. 709, 713, 443 A.2d 1268 (1982).

3

The defendant's argument that there was insufficient evidence to support the court's ultimate conclusion that she engaged in a discriminatory practice in violation of § 46a-64c (a) (1) by refusing to rent or show the property to Cortes because she received section 8 rental assistance is also unavailing. It is undisputed that the defendant did not show Cortes the rental property, and the defendant admitted in her trial testimony that she had informed Cortes that the property "was not section 8

ready." The court did not credit the defendant's proffered reason that she did not allow her to view the rental property because of Cortes' credit score. Cortes testified that, when she inquired about the rental property, the defendant stated that before she could schedule a viewing, she required certain information, including the defendant's credit score. Cortes testified that, when she informed the defendant that her credit score was "fair," the defendant responded that she had guidelines for all renters and that Cortes' credit score did not satisfy those requirements. The defendant testified that she did not rent or show the rental property to Cortes because Cortes' credit score failed to satisfy her requirements, despite not knowing Cortes' credit score, but only that Cortes had described her credit score as "fair." The defendant was asked on cross-examination: "You never asked for the value of the section 8 voucher, so you could not have considered the value of a voucher, when considering whether or not she should afford to pay the rent, would you agree with me on that?" The defendant responded, "If her credit didn't meet my criteria at that point in time, it was irrelevant for me to even ask her all those other questions." The court did not credit the defendant's explanation that Cortes' credit score did not satisfy her criteria. The court determined that the defendant's explanation that she refused to rent to Cortes on the basis of her credit score was "questionable" because the defendant lacked "any information" with which to make a proper determination regarding Cortes' credit score. The court further determined that, even if the defendant had a legitimate credit score policy, she applied it in a discriminatory fashion to Cortes, as she did not ask her three prior tenants, who did not have section 8 vouchers, for their credit scores prior to showing them the rental property or accepting rental application from them. On the basis of the evidence presented at trial, and the court's discrediting of the defendant's credit score explanation, we conclude that there was sufficient evidential support for the court's determination that the defendant engaged in a discriminatory practice in violation of § 46a-64c (a) (1).

B

The defendant also argues that there was insufficient evidence to support the court's conclusion that the defendant made discriminatory statements in violation of § 46a-64c (3). Specifically, she refers to the court's conclusion that her statement to Cortes that the rental property "was not section 8 ready" indicated a preference for tenants without section 8 vouchers. We are not persuaded.

We begin with the relevant legal principles for determining whether a statement is discriminatory under § 46a-64c (a) (3). In assessing whether a landlord's statement conveys a discriminatory preference,

an ordinary listener standard is used. See *Soules* v. *U.S. Dept. of Housing & Urban Development*, 967 F.2d 817, 824 (2d Cir. 1992); see also *Lopez* v. *William Raveis Real Estate, Inc.*, 343 Conn. 31, 47–48, 272 A.3d 150 (2022).

The defendant contends that the court "simply did not have the entire context of the conversation when the discriminatory statement was made to determine the intent behind the statement in order to properly assess how that statement in its actual context would affect an ordinary listener. . . . [T]here was not sufficient evidence established by the plaintiff . . . that reflects the full context of the conversation between the defendant and Cortes as to when the arguably discriminatory statement was made."[5] She contends that her statements that the rental property was "not section 8 ready" did not convey an intent to discriminate against prospective tenants on the basis of a lawful source of income, but rather that the statement was nondiscriminatory and indicated that the rental property needed repairs in order to pass a section 8 inspection.

The court determined that the defendant's statements that the rental property "was not section 8 ready," in conjunction with testimony from the defendant's own expert, Christine Paisley, regarding the discriminatory nature of such statements "objectively conveys a preference for nonsection 8 renters." We construe the court's determinations in this regard to mean that the defendant's statements were facially discriminatory, which is supported by the record.

In *Lopez* v. *William Raveis Real Estate, Inc.*, supra, 343 Conn. 40–48, our Supreme Court considered the standard for determining whether a statement made in connection with the sale or rental of a dwelling violates § 46a-64c (a) (3). The court concluded that the trial court properly applied the ordinary listener standard when determining whether certain statements made by the defendant's authorized representative in the course of renting an apartment owned by another were discriminatory. Id., 48. The court disagreed with the plaintiff that the court improperly considered the context of the statements and concluded that, because the trial court had determined that the statements of the defendant's authorized representative were not facially discriminatory, it was not improper for the trial court to consider the context of the statements in determining whether they stated a preference with respect to lawful source of income, in violation of § 46a-64c (a) (3). Id. In determining when it was necessary for a trial court to consider the context in which allegedly discriminatory statements are made, the court held that, "when a notice, statement, or advertisement that allegedly violates § 46a-64c (a) (3) is plainly discriminatory on its face, courts need not examine the surrounding context or the speaker's intent to determine whether the statement indicates any impermissible preference, limita-

tion, or discrimination to the ordinary listener. When, however, such a notice, statement, or advertisement is not facially discriminatory, courts may consider the context and intent of the speaker to aid in determining the way an ordinary listener would have interpreted it. . . . [T]he ordinary listener inquiry is one of fact." (Footnotes omitted; internal quotation marks omitted.) Id., 47–49. The court determined that, because the trial court had concluded that the statements of the authorized agent were not facially discriminatory, it was not improper for the trial court to consider the context of the statements in determining whether they stated a preference with respect to lawful source of income in violation of § 46a-64c (a) (3). Id., 48.

In the present case, as a result of the facially discriminatory nature of the defendant's statements that the rental property "was not section 8 ready," according to *Lopez*, the trial court "need not examine the surrounding context or the speaker's intent to determine whether the statement indicates any impermissible preference." Id., 47–48. If the defendant believed that the evidence presented at trial failed to convey the entire context of her statements, then she could have presented additional evidence at trial in furtherance of her argument that her statements were not discriminatory, facially or otherwise. She did not do so. Although the court was not required to, it nonetheless examined the context of the defendant's statements and discredited her view of the evidence—that her statements meant that the furnace needed repairs— in light of the evidence presented at trial, including that the defendant gave applications to, held open houses for, and agreed to rent the property to individuals who did not receive section 8 vouchers during the same time frame.

The court's ultimate factual finding, that the defendant's statements that the rental property was "not section 8 ready" conveyed to an ordinary listener an intent to discriminate against prospective tenants with section 8 vouchers in violation of § 46a-64c (a) (3), was not clearly erroneous. See *Lopez* v. *William Raveis Real Estate, Inc.*, supra, 343 Conn. 49 (ordinary listener inquiry is one of fact). As noted by the trial court, the defendant's expert witness, Paisley, testified that it would be discriminatory for a landlord to show a property only to individuals without section 8 vouchers and to inform those with section 8 vouchers that the property was "not section 8 ready" while making the necessary repairs. Additionally, Kemple testified that it is discriminatory for a landlord to decline to rent to section 8 recipients by using "code," such as saying that a rental unit is not section 8 ready. In light of the supporting evidence in the record, we reject the defendant's argument.

## II

The defendant next claims that the court abused its

discretion in awarding Cortes compensatory damages for emotional distress. We are not persuaded.

General Statutes § 46a-86 (c) provides in relevant part: "In addition to any other action taken under this section, upon a finding of a discriminatory practice prohibited by section . . . 46a-64c . . . the presiding officer shall determine the damage suffered by the complainant, which damage shall include, but not be limited to, the expense incurred by the complainant for obtaining alternate housing or space, storage of goods and effects, moving costs and other costs actually incurred by the complainant as a result of such discriminatory practice . . . ." Emotional distress damages may be awarded under § 46a-86 (c). See *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 705, 855 A.2d 212 (2004). "The assessment of damages is peculiarly within the province of the trier and the award will be sustained so long as it does not shock the sense of justice. The test is whether the amount of damages awarded falls within the necessarily uncertain limits of fair and just damages. . . . [W]e cannot disturb the decision of the trial court unless there are considerations of the most persuasive character. . . . The trial judge has a broad legal discretion and his action will not be disturbed unless there is a clear abuse. . . . The evidence offered at trial must be reviewed in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, 302 Conn. 263, 283, 25 A.3d 632 (2011).

In making its assessment regarding emotional distress damages, the court considered the factors set forth in *Commission on Human Rights & Opportunities ex rel. Harrison* v. *Greco*, CHRO No. 7930433 (June 3, 1985) pp. 7–8.[6] "Under the *Harrison* analysis, the most important factor of such damages is the subjective internal emotional reaction of the complainants to the discriminatory experience which they have undergone and whether the reaction was intense, prolonged and understandable. . . . Second, is whether the discrimination occurred in front of other people. . . . For this, the court must consider if the discriminatory act was in public and in view or earshot of other persons which would cause a more intense feeling of humiliation and embarrassment. . . . The third and final factor is the degree of the offensiveness of the discrimination and the impact on the complainant. . . . In other words, was the act egregious and was it done with the intention and effect of producing the maximum pain, embarrassment and humiliation." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Cantillon*, 207 Conn. App. 668, 680, 263 A.3d 887 (quoting *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, Superior Court, judicial district of New Haven, Docket Nos. CV-94-4031061-S and CV-95-4031060-S (June 6, 2011)), cert. granted, 340

Conn. 909, 264 A.3d 94 (2021).

The court credited the testimony of Cortes regarding her emotional pain and suffering. The court found that the property that Cortes eventually rented was inferior and dissimilar to the defendant's rental property, which "was quiet, had a fenced in backyard, newer appliances, and a preferred school district." The court also found that Cortes felt "great distress" because, due to the location in East Hartford of the unit she eventually rented, her son would attend the same school district where he had experienced bullying. The court found the defendant's actions offensive but found the defendant had not intended to inflict maximum pain, embarrassment or humiliation on Cortes and that Cortes was "able to proceed with her life and find a home for her family." The court concluded that an award of $7500 was warranted given the degree of pain, embarrassment and humiliation inflicted.

The defendant argues that the court abused its discretion in awarding Cortes damages for emotional distress because there was insufficient evidence to support the court's finding that the defendant had caused Cortes' emotional distress.[7] She contends that the court improperly based the award on Cortes' testimony alone, and that, in the absence of supporting testimony or medical evidence, the court was left to speculate as to the cause of Cortes' distress as "life in itself is stressful." She further argues that but for Cortes' former landlord selling the property, Cortes would have continued to reside within the same East Hartford school district in which her son experienced bullying.

The court's award was supported by sufficient evidence. The court credited Cortes' testimony, a determination that we will not disturb. See, e.g., *Mozell* v. *Commissioner of Correction*, 51 Conn. App. 818, 823, 725 A.2d 971 (1999) ("the judge is the sole arbiter of the credibility of witnesses and the weight to be given to their specific testimony" (internal quotation marks omitted)). Cortes testified that the unit she eventually rented was "a last resort . . . my time was running out with the extension for section 8." When asked on direct examination, "How has this entire process affected you, if at all," Cortes explained that the process "put me under a lot of pressure of trying to hurry up and move. I got very stressed out . . . my hair was falling [out]. You know, just the . . . anxiety of that. I had to keep my son in the same school district, had me really bad, and I was crying a lot." It was within the province of the court to draw the reasonable inference from Cortes' testimony that her emotional state was a result of the defendant's discriminatory housing practices. See *Mozell* v. *Commissioner of Correction*, supra, 823 ("[i]t is the right of the trier of fact to draw reasonable and logical inferences from the facts that it finds to be proved" (internal quotation marks omitted)).

We disagree with the defendant's argument that the court's award was speculative or otherwise improper because the court's finding of emotional distress damages relied solely on the testimony of Cortes. "[I]n garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff." (Internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 707, 41 A.3d 1013 (2012). In the absence of considerations of the " 'most persuasive character' "; *Commission on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, supra, 302 Conn. 283; we cannot determine that the court abused the exercise of its broad legal discretion in awarding emotional distress damages. Giving every reasonable presumption in favor of the correctness of the court's award, we conclude that the trial court did not abuse its discretion when it awarded Cortes compensatory damages for emotional distress.

### III

The defendant's final claim challenges the court's denial of her application for a writ of audita querela. She argues that the court abused its discretion in (a) declining to conduct an evidentiary hearing prior to denying her application for a writ of audita querela and (b) denying her motion for reargument and reconsideration.[8] There was no abuse of discretion.

The following additional facts and procedural history are relevant. During the pendency of the present appeal and nearly eleven months after the court's judgment, the defendant filed in the trial court an application for a writ of audita querela in which she requested that the court vacate its judgment on the ground of newly discovered evidence. The defendant attached to her application an affidavit of Stewart in which he stated in contradiction to his trial testimony that the defendant had inquired as to his credit score *prior* to showing him the rental property. The defendant further argued in her application that Cortes had testified falsely at trial both that her son had experienced bullying at school and that the defendant had informed Irizarry that the rental property "was not section 8 ready." She attached to her application an affidavit of Irizarry, in which he stated that he is active in his children's lives as he resides with Cortes and their children, that at no time has his son been bullied at school, that both he and Cortes have bad credit, that he did not observe Cortes experiencing any of the physical symptoms she claimed at trial to have suffered, that Cortes did not express concern about not being able to move into the defendant's rental property and that he did not contact the defendant regarding the rental property. In her application, the defendant contended that the issues raised in the affidavits of Stewart and Irizarry were not known to her until after the court had rendered judgment. The court denied the defendant's application.

The defendant then filed a motion for reargument and reconsideration in which she argued that the court had misapprehended the law when it denied her application without first holding an evidentiary hearing. The court denied the motion, reasoning that the defendant "claims there are new facts that need to be presented, but she had every opportunity to present any issues at trial and develop all factual issues prior to trial. The court had a full trial on the merits of the underlying case and made the findings it believed were proved at trial." The court further reasoned that the defendant, through her application for a writ of audita querela, was "attempting to retry the case," and that it had denied the writ "because she failed to meet the standard for the granting of such a rare remedy."

### A

The defendant argues that the court erred in failing to hold an evidentiary hearing prior to denying her application for a writ of audita querela. Specifically, she contends that during the pendency of the present appeal she "learned of new information that credibly refutes Cortes' testimony concerning bullying of her son and statements that she claims [were] told by her son's father" and "learned that one of her witnesses . . . Stewart provided false testimony." She further argues that the court erred in making a substantive decision where material facts were in dispute because, "[w]ithout a hearing, the trial court was not in a position to see the witnesses testify and to be able to fully undertake a proper factual finding as required." We are not persuaded.

We begin with our standard of review and relevant legal principles. "We consistently have held that, unless otherwise required by statute, a rule of practice or a rule of evidence, whether to conduct an evidentiary hearing generally is a matter that rests within the sound discretion of the trial court. . . . Under this standard of review, [w]e must make every reasonable presumption in favor of the trial court's action." (Citation omitted; internal quotation marks omitted.) *DeRose* v. *Jason Robert's, Inc.*, 191 Conn. App. 781, 797, 216 A.3d 699, cert. denied, 333 Conn. 934, 218 A.3d 593 (2019).

"The ancient writ of audita querela has been defined as a writ issued to afford a remedy to a defendant against whom judgment had been rendered, but who had new matter in defense (e.g., a release) arising, or at least raisable for the first time, after judgment. . . . Because the writ impairs the finality of judgments, the common law precluded its use in cases in which the judgment debtor sought to rely on a defense such as payment or a release that he had the opportunity to raise before the entry of judgment against him. . . . No authority has been cited to suggest that the writ of audita querela was ever available to present issues which were presented before the entry of the judgment

attacked by the writ. . . . The writ of audita querela provides relief from a judgment at law because of *events occurring subsequently* which should cause discharge of a judgment debtor." (Emphasis added; internal quotation marks omitted.) *Anthony Julian Railroad Construction Co.* v. *Mary Ellen Drive Associates*, 50 Conn. App. 289, 294, 717 A.2d 294 (1998). "Audita querela is a remedy granted in favor of one against whom execution has issued on a judgment, the enforcement of which would be contrary to justice because of (1) matters arising subsequent to its rendition, or (2) prior existing defenses that were not available to the judgment debtor in the original action, or (3) the judgment creditor's fraudulent conduct or circumstances over which the judgment debtor had no control." *Oakland Heights Mobile Park, Inc.* v. *Simon*, 40 Conn. App. 30, 32, 668 A.2d 737 (1995). "Equitable relief is extraordinary and not available as a matter of right, but rather it is within the discretion of the court." (Internal quotation marks omitted.) *Modzelewski* v. *William Raveis Real Estate, Inc.*, 65 Conn. App. 708, 715, 783 A.2d 1074, cert. denied, 258 Conn. 948, 788 A.2d 96 (2001).

The fact that the defendant may have learned of the existence of the additional evidence following the court's rendering of judgment does not suffice for the allowance of a writ of audita querela. Rather, the controlling consideration is whether the moving party could have *raised at trial* the issues presented in the application for a writ of audita querela. See *Oakland Heights Mobile Park, Inc.* v. *Simon*, supra, 40 Conn. App. 33. All of the issues raised in the defendant's application— including whether the defendant had asked Stewart for his credit score prior to showing him the rental property, whether Cortes' son experienced bullying at school, whether the defendant had informed Irizarry that the rental property was not section 8 ready, and the extent of Cortes' physical symptoms of emotional distress—reasonably could have been raised during trial. Because the issues were not raisable *for the first time postjudgment*, but rather were issues that not only could have been raised, but were actually raised and litigated at trial, a writ of audita querela is inapplicable. "[A] party is not entitled to relief by audita querela when the party has had a legal opportunity to avail him- or herself of the matters of defense set forth in the complaint, or when the injury of which the party complains is attributable to his or her own neglect." 7A C.J.S. Audita Querela § 3 (2022). Because the remedy of a writ of audita querela was not available, the court did not need to resolve the factual issues raised in the application, which was essentially an attempt by the defendant to retry the case. The defendant has not cited to any statute, evidentiary rule or rule of practice mandating her entitlement to an evidentiary hearing when the evidence cited in the application could have been presented at trial. We conclude that the court did not

abuse its discretion in declining to hold a hearing on the defendant's application.[9]

B

The defendant claims that the court abused its discretion in denying her motion for reargument and reconsideration. We disagree.

Our review again is deferential. "[A]s with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did. . . . In addition, where a motion is addressed to the discretion of the court, the burden of proving an abuse of that discretion rests with the appellant. . . . [R]eargument is proper when intended to demonstrate to the court that there is some . . . principle of law which would have a controlling effect, and which has been overlooked . . . . Reargument is also meant for situations where there has been a misapprehension of facts. . . . Reargument may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Citations omitted; internal quotation marks omitted.) *Carriage House I-Enfield Assn., Inc.* v. *Johnston*, 160 Conn. App. 226, 236–37, 124 A.3d 952 (2015).

The defendant failed to establish that the court overlooked a controlling principle of law, misapprehended relevant facts or otherwise abused its discretion in denying her application for a writ of audita querela. The defendant's attempt to relitigate the issues raised at trial by introducing evidence postjudgment when she had an opportunity to present such evidence at trial amounts to an attempted impermissible second bite of the apple. Accordingly, we conclude that the defendant has not demonstrated that the court abused its discretion in denying her motion for reargument and reconsideration.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant is self-represented in the present appeal. She was represented by counsel during trial and was self-represented during the posttrial proceedings.

[2] General Statutes § 46a-63 (3) defines " '[l]awful source of income' " as "income derived from Social Security, supplemental security income, housing assistance, child support, alimony or public or state-administered general assistance." See *Lopez* v. *William Raveis Real Estate, Inc.*, 343 Conn. 31, 38 n.5, 272 A.3d 150 (2022) ("[t]he lawful sources of income protected from discrimination by § 46a-64c include section 8 rental subsidies as a form of housing assistance" (internal quotation marks omitted)).

[3] "This analytical framework has on occasion been referred to as the direct evidence theory of discrimination. The designation of this analysis

as direct evidence is misleading. . . . [U]nder the *Price Waterhouse* model, a plaintiff may utilize *both* direct evidence and circumstantial evidence to prove that an employment decision was made because of or motivated by impermissible factors." (Internal quotation marks omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 104–105 n.16, 671 A.2d 349 (1996).

[4] To place this finding in context, the court found unavailing the defendant's proffered legitimate reason, regarding credit scores, for denying Cortes the ability to rent or view the rental property. The court determined that, even if the defendant had such a policy regarding credit scores, she applied it in a discriminatory fashion because the defendant had not inquired as to the credit scores of her three prior tenants, who were not recipients of section 8 vouchers, "prior to showing or accepting an application from them to rent the home."

[5] The defendant also argues that, "[t]o the extent that the court is relying on testimony of Cortes it is inconclusive as to what context the statement was made to either Cortes or her children's father. The children's father was not in court to testify. The court was not in the position to assess his credibility over that of the defendant's." Notwithstanding that the court was not required to consider the context of the statements, the defendant could have called Irizarry to testify at trial. Additionally, the court made no assessment as to Irizarry's credibility. Rather, the court credited the testimony of Cortes that the defendant informed Irizarry that the rental property was not section 8 ready and that she did not want to deal with the paperwork. The defendant's testimony that she did not recall speaking with Irizarry did not persuade the court that she had not spoken with him. The defendant did not object to the admission of Cortes' testimony. It is within the sole province of the court to make credibility determinations. See *Briggs* v. *McWeeny*, supra, 260 Conn. 322.

[6] The defendant does not contest the applicability of the *Harrison* factors.

[7] The defendant also argues that, because there was insufficient evidence for the court to determine that she had violated § 46a-64c, the court abused its discretion in awarding Cortes damages for emotional distress. We concluded in part I of this opinion that there was sufficient evidence to support the court's conclusion that the defendant had violated § 46a-64c (a) (1) and (3).

[8] The defendant filed a separate appeal, Docket No. AC 44445, from the court's denial of her application for a writ of audita querela and from the court's denial of her motion for reargument and reconsideration. The appellate clerk treated that appeal as an amendment to the present appeal, Docket No. AC 43887, and disposed of AC 44445. This court granted the motion of the defendant to file a supplemental brief and appendix in the present appeal, which addressed the defendant's claims regarding the court's denial of her writ of audita querela and denial of her motion for reargument and reconsideration.

[9] The defendant also argues that the court violated her right to due process when it made factual findings regarding "material disputed issues without a trial." The defendant's argument is misplaced. A trial occurred during which the defendant was afforded an opportunity to be heard at a meaningful time in a meaningful manner on the issues raised in the plaintiffs' complaint. At trial, the defendant presented evidence, cross-examined the plaintiffs' witnesses, and was afforded a reasonable opportunity to present the evidence she now raises in her application. Due to the nature of a writ of audita querela, an issue that reasonably could have been raised at trial is not permitted to be raised by that writ. As such, a writ of audita querela is not to be used to have a second bite at the apple for issues that the defendant reasonably could have raised at trial. Accordingly, the court did not deprive the defendant of her due process right to a fair trial by denying her an opportunity to relitigate the issues raised during trial. "[A] party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Internal quotation marks omitted.) *Ames* v. *Sears, Roebuck & Co.*, 206 Conn. 16, 22, 536 A.2d 563 (1988).